Virden *v.* Hosler, Appellant.

Argued September 26, 1956.   Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James J. Burns, Jr.,* for appellant.

*J. Lawrence McBride,* with him *Gilbert J. Helwig, Dickie, McCamey, Chilcote, Reif & Robinson,* and *Reed, Smith, Shaw & McClay,* for plaintiff, appellee.

*Jos. P. Passafiume,* for defendant, Chillcott, appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 27, 1956:

The appeals before us are from judgments entered on jury verdicts adverse to the appellant Edwin J. Hosler following a refusal by the court below of his motions for judgment non obstante veredicto and new trial in two trespass actions arising out of the same accident, consolidated for trial.

The accident, a collision of a Chevrolet pick-up truck driven by Harold F. Virden with a Chevrolet two-door sedan driven by the appellant Edwin J. Hosler, occurred in the City of Pittsburgh at the intersection of Bausman Street with Route 51, known as Saw Mill Run Boulevard. Virden brought an action to recover damages sustained against Hosler and Miss Virginia Ruth Chillcott, a passenger in Hosler's car. Miss Chillcott filed an answer alleging that she had no control over the Hosler car which was possessed and operated solely by Hosler. Hosler filed an answer and counterclaim. Subsequently Miss Chillcott brought an action against Virden for damages sustained by her,

and Virden then brought in Hosler as an additional defendant who filed an answer and counterclaim against the original defendant. Before trial Virden discontinued his action as to Miss Chillcott and proceeded against Hosler alone. In the action brought by Virden, hereinafter referred to as the Virden case, the jury rendered a verdict in his favor and against Hosler for $428. In the action brought by Miss Chillcott, hereinafter referred to as the Chillcott case, the jury rendered a verdict in favor of Virden, the original defendant, but in favor of Miss Chillcott for $7,494.73 against the additional defendant Hosler.

Saw Mill Run Boulevard at the scene of the accident runs east and west. Bausman Street intersects the Boulevard at an approximate right angle on the latter's northerly or westbound side but does not extend beyond the Boulevard on the south. Just before the actual intersection Bausman Street fans out into three traffic arteries, one a single lane curving to the right, one a single lane curving to the left, and one of two-lane width extending straight into the intersection. There are two approximately triangular shaped safety islands separating the three arteries. The surface of the road in the intersection was concrete. The accident happened at about 9 P.M. on October 5, 1951. It was raining but apparently not hard enough to substantially affect visibility. The intersection was quite well illuminated by flood lights on the outside of an A & P store and a Pittsburgh milk company store for illumination of their parking areas adjacent to the Boulevard. The Boulevard was of a width accommodating four lanes of travel. West of the intersection there was a single white line in the middle of the highway and east of the intersection there was a medial strip dividing east and westbound traffic. There was a traffic light at the intersection. The collision oc-

curred on the westbound side of the Boulevard after Virden had turned left at the intersection to go northwardly on Bausman Street and was struck by Hosler's car which was proceeding westwardly on the Boulevard.

Considering first the appellant's motion for judgment n.o.v. in the Virden case, the verdict having been in the latter's favor, the testimony and all reasonable inferences therefrom must be considered in the light most favorable to Virden, and the rule applies to all of the evidence, not merely that adduced on behalf of the party winning the verdict. Thus viewed, Virden who was travelling east, stopped his truck because the traffic light was red, at a transverse lateral line on the road regulating eastbound traffic. His left wheels were close to the white center line of the Boulevard "or possibly over it a matter of a few inches". While stopped in that position Virden observed two cars which were also stopped because of the traffic light on the opposite side of the intersection in the westbound curb lane at the lateral line regulating westbound traffic. This lateral line, because of the east artery into Bausman street, was at a greater distance from the center of the intersection than the lateral line for eastbound traffic where Virden stopped. In addition to the two cars stopped on the westbound curb lane, Virden observed two or possibly three cars moving west behind those cars from 100 to 200 feet to the rear of the second car stopped in the curb lane. Virden put his arm out of the window beside him, the driver's window, signalling a left turn before the red light changed. He was looking ahead and at the same time was watching the traffic light for Bausman Street. When the light for the Boulevard traffic turned green he looked again and observed no westbound cars in the center lane coming in the opposite direction and that

the two cars stopped in the curb lane had not "pulled out". He began his left turn into Bausman Street, crossed over the center westbound traffic lane for the purpose of going between the two safety islands and up Bausman Street. When the front of his truck had entered the area between the two safety islands and while his truck was still at a turning angle of about 45 degrees, he saw through his side window, the Hosler car approaching at a 90 degree angle about a car length away. At the time of the impact the two westbound cars were still stopped in their original position and Hosler's car had passed and was ahead of them. The front of Hosler's car hit the truck which was 14 feet long, at about the middle of its right side. Virden was thrown into the right-hand corner of the truck. His shoulder cracked the right side window; his head cracked the right panel of the windshield and he ended up with his head down on the floor under the heater on the right side with his feet on the seat with one shoe off, and his money spilled out of his pocket. When he regained his senses he found that his truck had been knocked sidewise about 10 or 12 feet and it was straddling the left-hand safety island. The frame of the truck was bent, the battery was broken into many pieces, the rivets on the supporting post were torn out by the roots, and the right side door was punctured, leaving a hole in the steel, by the ornament on the front of the hood of Hosler's sedan. After the accident the Hosler car was about two car lengths back from the point of collision on an angle in the center westbound lane.

Counsel argues that no negligence was established on Hosler's part and that Virden was guilty of contributory negligence. In doing so he largely relies upon the testimony of his client who stated that he entered the intersection before the Virden truck had

moved and that although he observed the truck as he approached the intersection, he did not see Virden give any "signal whatsoever". Of course this testimony was in direct contradiction of Virden's testimony, but the matter was one of credibility and the jury accepted Virden's testimony and rejected that of Hosler. Detail of Hosler's account of the happening supported the jury's adoption of Virden's version of what occurred. Hosler testified that his speed was only 10 miles per hour when he entered the intersection; that when he was half a car's length ahead of the cars stopped in the curb lane he applied his brakes and skidded forward into the Virden truck and that the distance between the point where he applied his brakes and the point of collision was about 20 feet. Giving due allowance for a wet road, the jury could well have concluded from the force of the impact demonstrated by the results produced, that Hosler who admitted he was in high gear was going at a much higher rate of speed. Virden testified that he started immediately after the traffic light turned green. Hosler testified that he observed the traffic signal change from red to green when he was about three car lengths from the intersection and that he was then going at about the same rate of speed, 10 or 15 miles an hour. If this were true, he had ample time in which to stop his car and yield the right-of-way to the truck which according to Virden's testimony, was already moving within the intersection. The green signal did not authorize Hosler to proceed without regard to other traffic: *Perpetua v. Philadelphia Transportation Co.*, 380 Pa. 561, 112 A. 2d 337. The Vehicle Code, Act of May 1, 1929, P. L. 905, Art. X, §1013, as amended, 75 PS §572(b), provides: "(b) The driver of a vehicle, ... approaching but not having entered an intersection, shall yield the right of way to a vehicle within such intersection or turning therein

to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn as required in this act.".

In contending that Virden was guilty of contributory negligence counsel argues that there was no testimony that Virden signalled his intention to turn left in the manner required by The Vehicle Code which requires that if the signal is given by means of hand and arm they shall be extended "horizontally from and beyond the left side of the vehicle". Virden testified, "I had my arm out of the window to signal a left turn.". He was 45 years of age, an experienced driver, having driven motor vehicles for 29 years. Although he had the burden of proof there was no attempt by Hosler's counsel on cross-examination of Virden to establish that Virden's signal had not been a proper one. On the other hand, the jury could well infer that it was, since the operators of the two vehicles which had stopped on the opposite side of the intersection apparently honored Virden's signalled intention and yielded the right-of-way. Appellant also argues that Virden executed his left turn without first observing whether or not such movement could be made in safety. Art. X, §1012 of The Vehicle Code, 75 PS §571(a) provides: "(a) The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, . . . and whenever the operation of any other vehicle approaching or following may be affected by such movement, shall give a signal, as required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement.".

The foregoing provision does not require that a motor vehicle operator before turning left at an intersection must wait until *all* approaching traffic comes with-

in the range of visible manual signals. Such construction of the section would serve to impede the flow of traffic without contributing to the safety of the travelling public; it would be a wholly unreasonable application of the law, detrimental instead of beneficial to traffic. The manual signal (or mechanical or electrical device) must be given to approaching vehicles that "may be affected" by the vehicle turning from a direct line. Whether the driver of a vehicle is justified in turning left at an intersection depends upon the circumstances of each case. Virden testified that when he signalled and began his turn to the left, the Hosler car was not occupying the center westbound traffic lane. It could reasonably have been inferred that the Hosler car at that time was one of the two or three automobiles 100 to 200 feet back of the two cars stopped for the traffic light. Virden testified that they were "moving up *behind* the parked cars" and that he "would say that they were along the curb side". If this testimony was not positive enough, we think it was a fair and reasonable inference that Hosler was in, and swung out of, the curb lane into the center westbound lane at the last instant when he observed the light turn green, in an endeavor to cross the intersection and proceed westwardly ahead of the two stopped cars.

Counsel relies upon the case of *Samuelson et vir v. McClelland*, 127 Pa. Superior Ct. 209, 193 A. 385. Although the facts in that case bear some similarity to those in the present case, it is readily distinguishable. There the plaintiff had parked her car on the south side of a highway leading from west to east, known as Route 20, at a point 15 feet west of the curb line of an intersecting highway known as Route 98 which ran north and south. She drove her car from its parked position eastwardly on Route 20 and then, without giving any signal of her intention to do so, turned left on

Route 98, and was struck by a car westbound on Route 20 when her car had reached a point 3 or 4 feet north of the center line of the latter highway. Not only did she give no signal but she did not look for cars approaching from the opposite direction when she reached the intersection or at any time after she started from her parked position 15 feet back therefrom. Here Virden was stopped *abreast* of the intersection, close to the center line of the Boulevard. He signalled his intention of turning left and looked for approaching traffic that might be affected by his movement. The factual situation is not unlike that in *Halbach v. Robinson Brothers*, 173 Pa. Superior Ct. 622, 98 A. 2d 750, where the plaintiff driving to school just a few minutes before opening time, reached a point opposite the driveway entrance on her left, slowed down, flashed an indicator to signify a left turn, looked, saw nothing approaching from the opposite direction and proceeded to drive across the left lane; and just as her front wheels cleared the highway, her car was struck on its right side by a tractor-trailer which she had not seen until an instant before. It was held that the question of the plaintiff's contributory negligence was for the jury. Contributory negligence may be declared judicially only when so clearly revealed that fair and reasonable persons cannot disagree as to its existence: *O'Connor v. Philadelphia Suburban Transportation Company*, 362 Pa. 404, 66 A. 2d 818. It is only where reasonable minded men could not honestly deduce any other inference that the question of contributory negligence will be taken from the jury: *Kunkle v. Continental Transportation Lines, Inc.*, 372 Pa. 133, 92 A. 2d 690. Under all the facts and justifiable inferences in this case we agree with the court below that Virden could not be declared guilty of contributory negligence as a matter of law.

Appellant's motion for judgment n.o.v. in the Chillcott case is based on the contention that no negligence was established on Hosler's part that was the proximate cause of the accident. What we already have said disposes of this contention. It was not necessary as urged by appellant, who cites no authority, that Miss Chillcott introduce evidence establishing Hosler's negligence. The evidence adduced by the original defendant enured to her benefit. After Virden brought in Hosler as an additional defendant, Miss Chillcott could recover against either or both of the defendants and it was not necessary for her to amend her complaint to this end. See Goodrich-Amram, Pa. R. C. P. §2255(d)-8.

Turning to appellant's motions for new trial, appellant claims that the verdicts were against the law applicable to the case and that the charge of the court was erroneous and inadequate. Our earlier discussion disposes of the first contention, and as to the second, a careful reading of the court's charge shows that the learned trial judge correctly stated the applicable law and clearly and adequately presented the issues and theories of the respective parties. When he finished his charge he inquired whether counsel had any requests for additional instructions or corrections. Some requests were made by counsel for the respective parties, including Mr. Burns, counsel for Hosler, all of which were granted. At the request of counsel for Virden, the court charged: ". . . if you find that Mr. Virden gave a signal of his intention to turn left at the intersection and that when he began his turn Mr. Hosler's car had not yet entered the intersection, then Mr. Hosler should have yielded the right of way to Mr. Virden. . . .". Counsel for Hosler complained of the affirmance of this request and asked that it be amplified. The record discloses the following then en-

sued: "Mr. Burns: What I had in mind, I would like your Honor to tell the jury that if a person is lawfully committed to an intersection in advance of another and gives a visible signal at the time that he is turning or about to make his turn, he might well have the right of way. On the other hand, if he doesn't give such a signal, then the other operator would still have or he would normally have the right to proceed straight ahead. The Court: I think that I did cover that. Mr. Burns: I don't think your Honor did say that. The Court: Yes, I think I did. I see members of the jury nodding in affirmance that I did so instruct them and I think counsel will agree that I did instruct them on that. Nevertheless, I affirm what you have said openly and in the presence of the jury, Mr. Burns. So what you have requested of me I affirm and relate to the jury as a correct statement of the law.". Thus the court complied with counsel's request, and counsel was apparently satisfied and made no further complaint or request in this regard.

In the Chillcott case appellant claims that the court did not adequately charge on contributory negligence in that he did not instruct the jury that Miss Chillcott could be found guilty thereof in failing to warn Hosler of the impending danger. Counsel made no request that the court so charge and obviously was in no position to do so for Miss Chillcott's testimony established that she was looking ahead but she did not observe anything that would put her on notice of impending danger until the instant before the collision. Counsel points to no testimony to the contrary.

Appellant also contends that the verdict of $7,-494.73 was excessive. Miss Chillcott suffered a cerebral concussion, multiple deep lacerations of her forehead and across the right upper eyelid and the bridge of her nose, and both knees were injured. Hemor-

rhages caused an anemic condition for about eight months. Plastic surgery helped but did not eradicate permanent facial disfigurement. Miss Chillcott testified that the scars redden and itch in the summer and in the winter cause a severe burning sensation. It is true, as appellant points out, that she was hospitalized only five days and in about a month returned to work, but medical treatment continued long after. Her hospital and medical expenses and expenditures for a knee brace, eye glasses and prescription totalled about $800, and she is faced with the prospect of future medical expenses. She suffered extreme pain, a nervous condition, recurrent headaches and discomfort, causing her to lose days at work. In discussing appellant's contention, the court below said: "... in consideration of the evidence of Miss Chillcott's injuries, [the verdict] did not shock the conscience of the Court. The Plaintiff was a young, unmarried woman and certain of her injuries, comprising facial lacerations, have resulted in disfigurement. Her legs were injured, especially at the knee joints, and certain limitations in the use of the right leg resulted therefrom. At the time of trial, she still experienced severe headaches resulting from the injuries about her head, and was being treated therefor. As a result of these injuries, the Plaintiff, who had been quite active socially and athletically, has felt it necessary to withdraw from many of her former activities. The manifestations of her injuries have caused the Plaintiff to require time off from her work. There seems to be little hope that these conditions will improve appreciably in the future. For these reasons, the Court deemed the amount of the verdict to be quite fair and reasonable.". We have carefully reviewed all of the testimony of Miss Chillcott and of the medical witnesses and we cannot say that the court erred or abused its discretion in approving the jury's award.

In addition to the motions for judgment n.o.v. and for a new trial, appellant filed a motion that the verdict be molded so as to include Virden, defendant in the Chillcott case, as jointly and severally liable to the plaintiff with Hosler, the additional defendant. This motion was founded on the contention that Virden was negligent as a matter of law, a contention properly presented and, as we have held, properly rejected in the dismissal of appellant's motion for judgment n.o.v. Moreover the jury verdicts having consistently and unequivocally exonerated Virden and placed sole responsibility upon Hosler, such express findings which admitted of no doubt as to the jury's intention, could not be molded in the manner urged by appellant without the substitution of entirely different verdicts, a clear usurpation of the jury's function.

This case was well tried by appellant's experienced counsel, but as before stated, it turned on credibility. The jury accepted Virden's account of the accident and rejected Hosler's although the latter's version to an extent was corroborated by Miss Chillcott. They were the only witnesses called and apparently the only witnesses available who saw the act al happening.

Judgments affirmed.