Linsenmeyer *v.* Straits, Appellant.

8

Argued October 3, 1960. Before JONES, C. J., MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Charles G. Sweet*, for appellant.

*Milton D. Rosenberg*, with him *Bloom, Bloom & Yard*, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, December 1, 1960:

This litigation arises out of an accident, involving three motor vehicles, which took place in Washington County. Both Straits, the appellant, and the Linsenmeyers, appellees, instituted suits for damages for personal injuries sustained in this accident, each party alleging the collision was caused by the negligence of the other. Both actions were consolidated for trial and, after trial, the jury returned verdicts in both actions in favor of the Linsenmeyers and awarded them total verdicts of $11,500. Straits moved for judgment n.o.v. and a new trial; from the refusal of both motions and the subsequent entry of judgment on the verdicts this appeal was taken.

On appeal from the refusal to enter judgment n.o.v. the testimony must be considered in the light most favorable to the verdict winner and all reasonable inferences arising therefrom must be resolved in his favor: *Muroski v. Hnath*, 392 Pa. 233, 235, 139 A. 2d 902; *Virden v. Hosler*, 387 Pa. 1, 5, 127 A. 2d 110. Viewing the present record in this light, it appears that the accident occurred on November 25, 1956 on an ice covered bridge—connecting Washington and Monogahela—, the travelable portion of which was twenty-six feet in width and divided into two lanes.

At the time of the accident, the Linsenmeyer vehicle—operated by Bernard Linsenmeyer, Sr., who was accompanied by his wife, Rose Marie, and minor son, Bernard,—entered the bridge travelling in the eastbound lane thereof at a speed of approximately fifteen miles per hour and about thirty feet behind a motor vehicle driven in the same direction by one Wenzel. The Wenzel vehicle started to slide on the icy pavement and finally stopped in such a position that it blocked the eastbound lane. Observing this situation, the driver of the Linsenmeyer vehicle applied his brakes, began to slide and came in slight contact with the rear of the Wenzel vehicle. The Linsenmeyer vehicle then crossed the center lane and came to rest in such a position that its front end occupied approximately three and one-half feet of the thirteen foot westbound lane, leaving approximately nine feet of the lane unobstructed. Approximately eight to ten seconds elapsed from the time that the Linsenmeyer vehicle came to rest until Straits' automobile—travelling in the westbound lane—crashed into the Linsenmeyer vehicle. During this interval of eight to ten seconds, Straits' vehicle travelled at least four hundred fifty feet.

Straits contends that Bernard Linsenmeyer, under this factual situation, is barred from recovery by reason of contributory negligence. This argument for judgment n.o.v. is without merit and overlooks both the facts and the applicable law. A review of this record indicates clearly that the questions of Linsenmeyer's negligence and contributory negligence were properly submitted to the jury. It was for the jury to reconcile the conflicting testimony and contentions of Linsenmeyer and Straits, and the jury resolved these questions with a verdict for Linsenmeyer in both actions, thus negating any negligence or contributory negligence on Linsenmeyer's part.

*Kurtz v. Philadelphia Transportation Co.,* 394 Pa. 324, 147 A. 2d 347, controls this situation. In *Kurtz,* plaintiff's vehicle, travelling north, stalled on the southbound tracks of the defendant's trolley line. Defendant's trolley was at that time four hundred feet away and continued without a decrease in speed until it struck plaintiff. In *Kurtz,* the defendant, as in the instant case, sought judgment n.o.v. upon the ground that the plaintiff was contributorily negligent as a matter of law and this Court held that the question of contributory negligence was properly submitted to the jury. *Helt v. Berman,* 155 Pa. Superior Ct. 294, 38 A. 2d 386, is also apposite. In *Helt,* plaintiff testified that, as he was travelling south on a four-lane highway across a bridge at a speed of twenty to twenty-five miles per hour, he was about to negotiate a turn to his right and, as he did so, the rear of his vehicle skidded to the left, was then righted and after proceeding straightway about twenty-five feet the front of the vehicle again skidded and ended at right angles to the highway completely blocking the northbound lane in which defendant was travelling. At the time plaintiff had completed his skid and his vehicle had come to rest in defendant's path, the defendant's vehicle was then between one hundred and one hundred fifty feet away. The case was submitted to the jury upon the theory that "if, as plaintiff testified, he had come to rest in the path of defendant's truck at a time when the latter was one hundred to one hundred fifty feet away, the jury might find defendant's driver was negligent in failing to stop or turn to his left . . . or in some other way avoid the collision". The Superior Court affirmed a verdict against the defendant on the theory that the issue was one of credibility to be determined by the jury. In the instant situation the court below very properly refused to enter judgment n.o.v.

Straits advances six reasons in support of his motion for a new trial: (1) that the verdicts were against the weight of the evidence; (2) that, in considering (1), supra, the court applied an erroneous principle of law; (3) that the verdicts were excessive; (4) that the court below erroneously refused to sustain challenges for causes; (5) that counsel in his closing address to the jury employed improper and prejudicial remarks; (6) that the conduct of the trial judge was improper and prejudicial.

In support of his first assignment of error, Straits contends that, since the only testimony as to his liability emanated from Linsenmeyer,—interested parties,—and, since their testimony was contradicted by Straits and five so-called "impartial and disinterested" witnesses, the verdicts were against the weight of the evidence and a new trial should be granted. With this position we are not in agreement. In support of his position, Straits cites cases[1] in which this Court has awarded a new trial where the plaintiff's version of the accident was contradicted by disinterested witnesses. An examination of these cases reveals that the witnesses therein were "eye witnesses" and that there was under the circumstances no reason to doubt their version. In the present situation, none of the "impartial and disinterested" witnesses saw the actual collision. One of the witnesses was Straits' father-in-law and three of the witnesses—Mr. and Mrs. Wenzel and their daughter—had just experienced the frightful sensation of sliding and being involved in a collision. Not only did Mr. Wenzel give conflicting testimony on the important time interval involved but there was a grave

---

[1] *Holden v. Pennsylvania R. R.*, 169 Pa. 1, 32 A. 103; *Harris v. Ruggles Lumber Co.*, 376 Pa. 252, 101 A. 2d 917; *Pendleton v. Philadelphia Transportation Co.*, 376 Pa. 598, 103 A. 2d 724; *Hartigan v. Clark*, 389 Pa. 283, 133 A. 2d 181.

question as to his impartiality. Under these circumstances the credibility and weight of the testimony was clearly for the jury: *O'Farrell v. Mawson,* 320 Pa. 316, 320, 182 A. 538. There was sufficient evidence to sustain these verdicts and the court below did not abuse its discretion in refusing the motion for a new trial on this ground: *Kiser v. Schlosser,* 389 Pa. 131, 132, 132 A. 2d 344; *Wilson v. Kallenbach,* 332 Pa. 253, 256, 2 A. 2d 727.

Straits' second assignment of error is that the court, in determining whether the verdicts were against the weight of the evidence, applied erroneously the principle of law applicable in the disposition of a motion for judgment n.o.v. The court, in passing upon the motion for a new trial in this respect, stated: "As to the allegation that the verdict was against the weight of the evidence, we deem it sufficient to refer only to some of the well recognized rules in connection therewith. *The jury having returned a verdict in favor of the plaintiffs, we must view the evidence in a light most favorable to them. . . .* There is no question but that the jury resolved the facts and the weight of the testimony in favor of the plaintiffs. *They therefore must be given the benefit of every fact and inference of fact pertinent to the issues which may reasonably be inferred from the evidence; that such facts and inferences of fact must be taken as true; that all testimony and all conflicts of testimony must be resolved in* favor of the plaintiffs." (Emphasis supplied.) *Obviously,* the court below erred in its application of this rule: *Sherman v. Manufacturers L. & H. Co.,* 389 Pa. 61, 132 A. 2d 255; *Wolansky v. Lawson,* 389 Pa. 477, 133 A. 2d 843; *Kuhns v. Brugger,* 390 Pa. 331, 135 A. 2d 395. However, an examination of the opinion of the court below *in its entirety* discloses that it did *actually* apply the correct principle.

We have made an independent examination of this record and we conclude that the verdicts were not against the weight of the evidence. Even though the court fell into error in its statement of the applicable law, yet under the circumstances such error was not of such substance as to require a new trial, particularly in view of our opinion that the verdicts were not against the weight of the evidence.

Straits' third assignment of error is that the verdicts—$8,000 to Rose Marie Linsenmeyer, $3,000 to Bernard F. Linsenmeyer and $500 to Bernard F. Linsenmeyer, III—were excessive under the facts and circumstances of the case. We have carefully examined this record and such examination does not indicate that the verdicts were so excessive as to shock our conscience nor that the court below palpably abused its discretion in sustaining these awards. We are satisfied that such verdicts cannot be properly set aside or modified: *James v. Ferguson*, 401 Pa. 92, 99, 162 A. 2d 690; *Flank v. Walker*, 398 Pa. 166, 171, 157 A. 2d 163.

In further support of his argument that the verdicts were excessive, Straits quotes at length in his brief from a study prepared by the Insurance Committee of the Pennsylvania Chamber of Commerce, which he contends illustrates that the general pattern of justice in Washington County in personal injury actions favors plaintiffs and is unfavorable to defendants. While this study is most interesting and informative, it bears no relevance to the present situation. It is one of the privileges under our system of legal jurisprudence that a jury in one county may give greater damages than a jury in another county for a similar injury. The verdict of a jury is the product of many factors, both objective and subjective. A comparative study of jury verdicts, if it is to acquire any real sig-

nificance or relevancy, must emanate from an evaluation, if at all possible, of all these factors. The present study to which our attention has been directed fails to demonstrate any such evaluation and, hence, is not pertinent to the present issue.

Straits' next allegation is that the trial judge erred in refusing to sustain certain of defendant's challenges for cause. These challenges were made because certain prospective jurors knew some of plaintiff's counsel and had had in the past some legal relationship with the firm of counsel which represented plaintiff.[2] We do not find on this record any evidence to justify a finding that by reason of such relationships any of the prospective jurors were disqualified. The trial judge —in a much better position to evaluate the situation than this Court because he saw the prospective jurors and heard their responses on voir dire—found no reason to justify a belief that these jurors by reason of their prior relationship with one or more of Linsenmeyers' counsel would thereby be unable to fairly try the issue between Straits and Linsenmeyer. In this area of the law, wide latitude is given to the discretion of the trial judge and, absent any showing that the trial judge abused his discretion in this respect, his action must be sustained: *Commonwealth v. Pasco*, 332 Pa. 439, 445, 2 A. 2d 736; *Commonwealth v. Spahr*, 211 Pa. 542, 545, 60 A. 1084.

Two other assignments of error are of more serious import. In the first place, during his argument to

---

[2] Five jurors were challenged for cause. Three of the jurors had been clients of the law firm representing Linsenmeyers; one juror was an "old friend" *presumably* of one of Linsenmeyer's lawyers; one juror came from the same village as one of Linsenmeyers' lawyers and knew him. The court labeled the relationship of the latter two jurors as that of "acquaintance" and noted the legal relationship of the other three jurors was "not recent".

16

the jury Linsenmeyers' counsel, commenting on testimony offered by the state policeman who had investigated the accident, stated that "he [the state policeman] must have come to the conclusion that no one should be arrested criminally". Straits promptly objected to this statement as being highly prejudicial and requested the court to caution counsel and direct the jury to disregard the statement, although he did not move to withdraw a juror. The court then stated that, since counsel had agreed not to repeat the remark, no further ruling was required and the court did not instruct the jury to disregard the remark. While the trial judge is the one best able to evaluate the effect on the minds of the jury of counsel's remark, his conclusion will be inquired into if there is an abuse of discretion: *Wilbert v. Pittsburgh Consolidated Coal Co.*, 385 Pa. 149, 157, 122 A. 2d 406; *Narciso v. Mauch Chunk Twp.*, 369 Pa. 549, 552, 87 A. 2d 233. This remark on the part of Linsenmeyers' counsel was improper and should not have been made and it would have been much better had the trial court under such circumstances immediately cautioned the jury to disregard this remark. However, the state of this record does not demonstrate that such remark in anywise influenced these verdicts and the failure of the court to instruct the jury to disregard the remark, under the circumstances, was harmless error.

Lastly, Straits urges that due to an incident which occurred during the course of the trial, outside of the courtroom, his cause was seriously prejudiced. During May 1959 a bitter election contest for the Democratic nomination for district attorney in Washington County took place and in this contest there were two opponents, Michael A. Hanna, Esq., the incumbent, and Palmer J. McCloskey, Esq., for whom Straits' counsel was acting as campaign manager. On May 12, 1959—

the second day of the trial—a political advertisement appeared in many of the newspapers of Washington County, which advertisement was signed by all the Common Pleas judges of that county, including the trial judge. This advertisement urged the re-election as district attorney of Michael A. Hanna and purported to set forth Hanna's record in office. It stated, inter alia: "Michael A. Hanna . . . has not waged and does not believe in waging a DIRTY, SLANDEROUS CAMPAIGN OF POLITICAL FILTH AND LIES".

Canon 28 of the Canons of Judicial Ethics provides, inter alia: "He [a judge] should avoid . . . the public endorsement of candidates for political office . . ." The conduct of the three judges in signing this political advertisement which publicly endorsed a candidate for public office constituted a direct, flagrant and inexcusable violation of this canon. *No justification* whatsoever can be found for the action of the trial judge and the other judges in violating one of the ethical standards required of the judiciary.

However, our present concern is whether such conduct on the part of the trial judge in anywise affected the outcome of this litigation or prejudiced Straits.

Immediately after publication of this political endorsement and during the second day of the trial, Straits' counsel moved Judge WEINER for the withdrawal of a juror and a continuance of the case. He alleged that the jurors in this lawsuit would know that he, Straits' counsel, had been publicly stigmatized by the trial judge as an active participant in a "dirty, slanderous campaign of political filth and lies" and that such stigmatization of him would naturally have an adverse effect upon Straits' interest. The court, refusing to withdraw a juror and continue the case, observed at side bar, that "anybody who engages in a political campaign subjects himself to a certain amount

of criticism or attack, with justification or unjustification". Assuming the truth of this observation, yet the trial court failed to understand that members of the bar, or other members of the body politic, should not expect to become the subject of criticism and attack by members of the judiciary who are bound, by ethical standards, not to participate in political activities other than when they are seeking re-election to the bench.

While the conduct of the trial judge in making this public endorsement of a candidate for public office cannot be condoned or justified that does not necessarily mean that such conduct would justify a new trial in this litigation. There is nothing upon the instant record to indicate that any of the jurors had read this political advertisement or that any of the jurors knew that Straits' counsel was campaign manager for the person whose manner of campaign was stigmatized by the trial judge, or that such political advertisement, directly or indirectly, in any manner prejudiced or affected the outcome of this litigation or Straits' interest. There is nothing of record to show that this improper conduct outside the courtroom on the part of the trial judge adversely affected the outcome of this litigation and, absent any such proof, we cannot grant a new trial upon this basis.

Judgment affirmed.

---

Dissenting Opinion by Mr. Justice Bok:

I must dissent on the point of the indefensible conduct of the judges in allowing such a political advertisement to go out over their names. To compound their offense, the advertisement sought to promote the fortunes of an aspirant to a court position, that of district attorney, whose opponent's campaign manager

was counsel for one of the parties actually on trial before one of the signatory judges.

Because of the nature of the advertisement nothing needed to be said to imply that Mr. Hanna's opponent believed in waging and was waging a "dirty, slanderous campaign of political filth and lies" or that his campaign manager, sitting right there at the counsel table trying to prevent the plaintiffs from recovering money for their injuries, was the prime mover in such tactics.

The fact that the record does not show that any juror had read the advertisement or knew that counsel was campaign manager for McCloskey or was influenced by these facts does not cure the situation. Counsel had no recourse but to keep silent and hope that the jurors were still neutral. It would have been madness to ask them on voir dire if they had seen the advertisement and, in order to identify it to them, read it aloud, or if they felt it applied to him. This is not one of those calamities that get into court records. It is rather an exact example of the cow that put her hoof in the pail; the milk cannot possibly be strained clean.

We should need no proof to regard such litigation as infected beyond repair.

Nor am I satisfied to let the case go because apart from the advertisement the result appears to be a good one under the evidence. I deplore the ethical future of our profession if we condone improper behavior on the Bench so long as the cases turn out well.