Green, Appellant, *v.* Prise.

Argued March 14, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Roslyn M. Litman,* with her *Litman & Litman,* for appellant.

*Randall J. McConnell, Jr.,* with him *Dickie, McCamey, Chilcote & Robinson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 2, 1961:

For four and a half years prior to June 25, 1957, Howard S. Green was a milkman employed by the Otto Suburban Dairy. On that day he fell while delivering milk at an apartment house owned by the defendant, Arthur B. Prise. His milk bottles broke and jagged edges of glass severed the ulnar nerve of his right arm. Ulnar paralysis set in, immobilizing his fingers and reducing the hand to a claw-like member which cannot be used to grasp, hold, or even shake hands. Nor can it accommodate a glove. Green brought a suit in trespass against Prise, charging him with negligence in the maintenance of his premises. The jury awarded him a verdict of $11,000. The Court of Common Pleas of Allegheny County entered judgment n.o.v. The plaintiff appealed.

The apartment building of the defendant, located at 1300 Veto Street in Pittsburgh, has a front vestibule made up of a doorway, three wooden steps and a landing, level with the first floor. It was here that the accident which is the subject of this lawsuit occurred. Photographs introduced at the trial show that the three steps were covered with rubberized matting. The top mat (that is, the one covering what was referred to

throughout the trial as the "third step") had an irregular hole in the center of it.

In the plaintiff's own language the accident happened in the following manner: "As I was walking up the steps, put my foot on the third step, the covering of the step slipped and the toe of my right foot caught on that covering and started my fall. As I did, I was in the process of putting my left foot up to the landing, and the linoleum covering there gave and the heel of my foot caught on it. I knew I was falling. I threw my bottles out. As I was falling, I tried to grab for a railing to stop my fall, but there was no railing there in the apartment, and then I fell on top of the glass."

Mrs. Julia King, who had been living in the apartment house for twenty years, testified that the rubber mat which covered the third step was badly worn and that in the center it had thinned to such an extent that one could see the surface of the wood beneath. She also said that the linoleum on the landing was "loose on the edge." She testified that this condition had existed for a year or more.

The testimony of the plaintiff and the testimony of Mrs. King, plus the photographs, established a condition which would justify a jury in finding that the owner of the apartment house failed in maintaining the premises as required by law for the safety of business visitors, in which category the plaintiff could certainly be placed. Section 343 of the Restatement of Torts reads:

"Section 343. DANGEROUS CONDITIONS KNOWN TO OR DISCOVERABLE BY POSSESSOR. A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they

will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

There can be no question that the defendant would have discovered the dangerous condition of the steps, as described by Mrs. King, if he had exercised reasonable care. In fact, he testified that when he purchased the property (four months prior to the accident) he inspected the building and on many other occasions re-inspected it. Thus, he cannot claim that he did not have an opportunity to see the defect if it existed. He also said that in all his inspections he did not detect any irregularity in the steps. Thus a question of credibility arose between him and Mrs. King, the latter having testified, as already stated, that the defect had existed for a year or more. The jury believed Mrs. King. The defendant having entered, with Mrs. King, into the contested arena of credibility, has no legal basis upon which to claim that he was not fairly worsted when the jury chose to accept her testimony in preference to his own.

However, apart from actual notice, the defendant would be chargeable with constructive notice if the defective condition existed for such a period of time that in the normal course of events the condition would have to come to his attention. Whether there was constructive notice or not would also be a question for the jury.

In *Coxey v. Guala,* 112 Pa. Superior Ct. 460, 465, the plaintiff was injured because of a loose pad on steps in the defendant's premises. The Superior Court said: "This was, therefore, a clear question of fact for the

jury as to whether or not the steps were in a proper condition on the date of the accident and, if defective, whether that condition had existed for a sufficient length of time to amount to constructive notice to the defendants. What length of time would be sufficient is entirely a question for the jury, varying according to the circumstances and particularly the use which was being made of the steps. If the pad was loose as described by the plaintiff, the jury might have inferred that it had existed a sufficient length of time to have charged defendant with constructive knowledge."

It is to be mentioned here in this connection that the plaintiff's case was further strengthened by Mrs. King's testimony to the effect that immediately after the accident she examined the rubber matting and found that it was loose at one end and was "bunched up."

With regard to the linoleum on the landing Mrs. King testified that it also was loose: "It wasn't fastened down, and if you weren't careful, it would kick up."

The defendant argued in the court of common pleas that the plaintiff's account of the accident did not "picture or visualize" the condition which was the proximate cause of the accident. The court rejected this contention: "In the case at bar, the direct testimony of the plaintiff as to the happening of the accident and the condition of the stair covering, and the direct testimony of another witness as to that condition, sufficiently 'pictured and visualized' the happening of plaintiff's fall to enable the jury to find the defendant negligent and that negligence the proximate cause of plaintiff's injuries."

The court said further: "From this testimony and the exhibits, the jury could have deduced that the defendant either failed to inspect the stairway with suf-

ficient care to discover a condition which was discoverable or, despite his testimony, failed to inspect the stairway. In either event, there is sufficient evidence to support a jury's finding that the defendant was remiss in his duty to inspect and repair."

And then also: "Further, the defendant contends that the plaintiff, in his testimony, described only the happening of an accident and did not testify to the defective condition which caused his fall.

"With this latter contention we cannot agree. It is true that the plaintiff testified that he looked at the steps before ascending them and that they appeared to him to be in good condition. However, in his direct testimony, the plaintiff told of the padding on the step giving way as he put his right foot on the third step and the linoleum on the landing giving way as he stumbled forward trying to regain his balance. With this testimony before it, the jury was justified in inferring that a defective condition did exist, although not observable to the person using the stairway, and that that condition was the proximate cause of plaintiff's injuries. As the Court said in Smith v. Bell Telephone Co. of Pa., 397 Pa. 134 (1959): 'It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to the liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability . . .' "

Why did the court go so far along the road to affirmance of the verdict and then, when only a step away from what might well seem to be a logical goal, suddenly change direction and reverse the verdict? We must now return to the trial and relate that in addition to the testimony of Mrs. King on the matter of the long-standing defective condition of the steps, other evidence on the subject was presented through Mrs. King's daughter, Mrs. Charlotte Bik.

Mrs. Bik's testimony did not fit precisely over Mrs. King's testimony as a wall-to-wall carpet might cover an oddly shaped room, and, for that reason, the court concluded that there was a contradiction between the two witnesses. Therefore, because of that "contradiction," the case should not have been submitted to the jury, the Court said. Here the learned court erred.

There was no compelling necessity to contrast Mrs. King's testimony against Mrs. Bik's testimony for the purpose of evolving a drastic decision that the testimony of one repudiated that of the other. Mrs. King possessed a more intimate knowledge of conditions in the defendant's apartment house than did her daughter. Mrs. King had lived there twenty years, the daughter lived there less than two years. Even so, Mrs. Bik's testimony, insofar as it carpets the room of probativeness, does not clash with Mrs. King's testimony to the extent that one must say they cannot remain in the room together. When Mrs. Bik was asked: "What was the general condition of the rubber mats as you remember them?" she answered: "I honestly don't remember, but I know they were thin."

Mrs. King, who also testified that the carpet was well-worn, went further and said that at one spot it was worn to such a thinness that it parted and revealed some of the wood beneath. Thus, there is no need to say, in the comparison of these two witnesses, that the testimony of one destroyed the other. It could well be that Mrs. Bik was not sufficiently interested in the condition of the steps to note the thinness of the rubber mat on the third step. She did say: "But they seemed safe enough" but, of course, such a statement was merely an opinion which could have no probative value.

Moreover, it is to be noted that the cause of the accident was not only the third step. The third step conspired with the linoleum covered landing immedi-

ately above to trap the milkman into the precipitate fall which has ruined his right arm. Had it not been that Green's left foot caught in the loose linoleum on the landing, he might still have recovered from the imbalance caused by his right foot sliding on the punctured, unanchored rubber mat on the third step. Thus, with his right foot slipping and his left foot imprisoned, so that he could not immediately effect equilibrium, it was inevitable that he would tumble, as indeed he did, among his fractured milk bottles, sustaining serious injury in the midst of the jagged jungle of broken glass.

The defendant seeks to ignore the linoleum angle of the case, and in his brief gives it only the slightest attention. However, he may not eliminate it by closing his eyes to it. It is an integral part of the case and Mrs. Bik confirmed what her mother said about the linoleum. She testified: "Well, the landing, linoleum was used. There were cracked places on the top step, and, of course, my mother showed me the strip that was loose."

If one reads Mrs. Bik's testimony carefully he will find that the so-called contradiction between her assertions and those of her mother consists only in a lessened intensity of observation rather than an actual clash in objectivity. What Mrs. King saw, Mrs. Bik did not notice. For instance, Mrs. Bik testified: "Q. At that time you saw no bare spot in that third step, did you ? A. *I didn't notice it, no.* Q. And at no time before that had you seen or noticed a bare spot in that tread, had you? A. *As far as I can remember, I never noticed anything.* . . . Q. There didn't appear to be anything wrong with those treads that would make them unsafe as you walked up and down them; is that correct? A. *Not in noticing,* as I passed, no." (Emphasis supplied).

Some people very measuredly and carefully ascend and descend steps. Others take them at a bound, often spanning two at a time. Youth is more apt to do this than age. Mrs. Bik, as a young woman, may well have passed over the steps so quickly as not to notice what was there, as in fact she said she did not notice. Failing to notice does not negative the existence of what is positively claimed by another to exist.

The defendant expands on the theme of differences in testimony and brings in the plaintiff also in the alleged sphere of contradiction. He says in his brief: "We submit that an examination of the testimony of all three of the named witnesses reveals a definite and marked contradiction in many important aspects, not only as to the question of notice, but as to the actual existence of the defect which is alleged to have caused the accident."

But here he overlooks what are perhaps the most fundamental rules controlling jury verdicts and appellate reviews. This Court has stated more times than there are steps in all the courthouses in the 67 counties of our Commonwealth that in considering judgments n.o.v. the record must be read in the light most favorable to the verdict winner. As recently as December 1, 1960, Mr. Justice BENJAMIN R. JONES, speaking for the Court in *Linsenmeyer v. Straits,* 402 Pa. 7, 9, said: "On appeal from the refusal to enter judgment n.o.v. the testimony must be considered in the light most favorable to the verdict winner and all reasonable inferences arising therefrom must be resolved in his favor: *Muroski v. Hnath,* 392 Pa. 233, 235, 139 A. 2d 902; *Virden v. Hosler,* 387 Pa. 1, 5, 127 A. 2d 110."

In observance of that rule, we may conclude in appellate review that the jury weighed the separate accounts of Mrs. King and Mrs. Bik and found that, if there was any contradiction in testimony between Mrs. King and Mrs. Bik, Mrs. King's version more accurate-

ly met the test of verisimilitude and, accordingly, returned a verdict for the plaintiff.

It is a rare case indeed where all witnesses agree on every detail involved in a lawsuit. It would be astonishing if they did. Some witnesses are more observant than others, some have better memories, some express themselves with more clarity and fluency. It is for that reason that juries are instructed to reconcile all the testimony in the case if possible, but where it is irreconcilable they may reject what they don't believe and accept what is credible. Thus, there was no compulsion on the part of the jury to guess, as defendant's counsel argues, between the testimony offered by Mrs. King and that offered by Mrs. Bik. In *Stevenson v. Pa. Sports & Enterprises, Inc.,* 372 Pa. 157, 162, this Court said: "Where in one part of a plaintiff's testimony he is entitled to have his case submitted to the jury, and in another he is not, it is for the jury to reconcile the conflicting statements: Greene v. Philadelphia, 279 Pa. 389, 124 A. 134."

If a plaintiff's case may not, as a matter of law, fail because of contradictions in his own testimony, a fortiori it would not crumble because of contradictions in the testimony of witnesses.

The lower Court and the defendant cite three cases in assumed support of the decision of judgment n.o.v.: *Mudano v. Phila. Rapid Transit Co.,* 289 Pa. 51; *Musleva v. Patton Clay Co. (No. 1),* 338 Pa. 249; and *Wagner v. Somerset Memorial Park,* 372 Pa. 338. None of these cases is applicable to the facts in the case at bar. *Mudano* had to do with expert witnesses. Admittedly there are no expert witnesses in the instant case. *Musleva* declared: "A party attempting to fix liability on another has no right to have his evidence submitted to a jury if it is so inconclusive, i.e., so lacking in persuasiveness, that it fails to establish to an ordinary, reasonable mind the truth of the charge or claim made."

Certainly there is nothing in the plaintiff's case here which is so contrary to natural laws that one with an ordinary, reasonable mind could not believe it to represent fact. The *Wagner* case involves a promissory note and an averment of fraud, which brings into play rules of evidence which have no application in a trespass case such as the one before us.

Judgment reversed and record remanded for entry of judgment on verdict for plaintiff.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I would affirm the judgment which was entered for defendant n. o. v. The majority opinion fails to state (1) that plaintiff fell in broad daylight, and (2) that plaintiff fell because the covering on the *third* step on the stairs was loose, and (3) that defendant had any actual or constructive notice of *this* defect which caused plaintiff's accident and injuries, and (4) that plaintiff had used these stairs at least twice a week for over two years before the accident, and (5) that plaintiff gave no explanation of why he didn't see the defect which the majority assert defendant should have seen and known for over a year.

What was the *exact* cause of this accident according to plaintiff himself? The majority opinion answers this question by stating that there was "an irregular hole in the center" of the *third* step and a loose piece of stripping on the landing which caused plaintiff's fall. Let's analyze the evidence. Plaintiff himself testified as follows: "A. As I was walking up the steps, put my foot on the *third* step, *the covering of the step slipped* and the toe of my right foot caught on that covering and started my fall. As I did, I was in the process of putting my left foot up to the landing, and the linoleum covering there gave and the heel of my foot caught on

it. I knew I was falling. I threw my bottles out. As I was falling, I tried to grab for a railing to stop my fall, but there was no railing there in the apartment, and then I fell on top of the glass." Not one word that he stepped in the hole or that the hole caused him to fall. Plaintiff fell because the covering on the *third* step *slipped*—he said so himself.

Plaintiff's best witness to prove negligence of and *notice* to defendant was Mrs. King who testified as follows: "Q. Now then, can you tell the Jury what was the condition of the rubber covering on the steps on the morning of June 25th? Not the landing but the rubber covering on the steps. A. It was worn, badly worn. Q. For how long before the morning of June 25, 1957, when Howard Green had his fall, had the steps been in such condition? A. A long time. Q. Would you say as long as a month, several months, longer than that, shorter than that? A. A year or longer. Q. Now, with respect to this linoleum covering on the landing or *fourth* step,* on the morning that Mr. Green had his fall what was the condition of that linoleum covering? A. It was *loose on the edge*. . . . Q. What do you mean by worn? That it was worn down a little more than the other, it wasn't quite as thick as the rest of it; is that right? A. It was *worn off*. Q. Could you see the step? A. Yes. Q. On the date of the accident you *could see the step through that tread? A. Yes.* . . . Q. Mrs. King, with reference to the area which you have circled on Plaintiff's Exhibit 11 on the third step, how long before this accident was that area bare or worn through so that the wood showed? . . . Q. Over a year? A. Yes. . . . Q. You knew there was a part worn through, that there was a hole in the tread; is that right? A. Yes. Q. You had noticed it in your travels up and down these steps; is that right? A. Yes.

---

* The fourth step was the landing.

But it did not interfere in any way. I mean it was just flat and smooth."*

I have never been able to understand why what is clearly seeable by a defendant is clearly unseeable by a plaintiff; I suppose they must wear different glasses.

It still is or ought to be the law (a) that a property owner is not an insurer, and (2) that a person in order to recover for injuries, cannot walk or drive blindly without using his eyesight and his other senses, and failure to observe what is plainly observable will bar recovery. There was ample evidence that the covering was worn and bare, but not a scintilla of evidence that prior to the accident the covering on the *third* step where plaintiff fell *was loose;* contrariwise, if a defect be assumed, it existed for over a year prior to the accident and was clearly visible to everyone who used the stairs; ergo, plaintiff could and should have seen it. Each or both of these reasons bar recovery by plaintiff.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.

---

\* Mrs. King's daughter, Mrs. Bik (whose testimony on material points contradicted that of her mother), testified "the steps seemed safe enough."