J-A02039-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| MENDY TRIGG, INDIVIDUALLY, AND SMITHFIELD TRUST, INC., AS THE GUARDIAN OF THE ESTATE OF J.T., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CHILDREN'S HOSPITAL OF PITTSBURGH OF UPMC, | |
| Appellee | No. 1041 WDA 2017 |

Appeal from the Judgment entered June 28, 2017,
in the Court of Common Pleas of Allegheny County,
Civil Division, at No(s): GD 13-002322.

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: FILED SEPTEMBER 15, 2020

The Supreme Court of Pennsylvania remanded this medical-malpractice appeal to us. The High Court held that Mendy Trigg and the Smithfield Trust, Inc.,[1] "waived their argument that the trial court erred by not observing the demeanor and tenor of prospective juror 29 during voir dire." Trigg v. Children's Hosp. of Pittsburgh of UPMC, ___ A.3d ___, ___, No. 3 WAP 2019, 2020 WL 1932639 at *7 (Pa. 2020). Originally, the Triggs appealed to this Court from a judgment entered on the jury verdict favoring Children's Hospital of Pittsburgh of UPMC ("the Hospital"). We now affirm.

_____

[1] Smithfield Trust, Inc. is guardian of J.T.'s estate. For simplicity sake, we will refer to the Appellants as "the Triggs."

The Supreme Court described the facts of this case as follows:

> Mendy Trigg is the parent of J.T., who, in 2011, was age 4 and afflicted with craniosynostosis, a medical condition which results when, during an infant's growth and development process, his or her skull closes prematurely and exerts increased pressure on the brain. On May 19, 2011, J.T. underwent surgery at the Hospital to correct this condition. Afterward, J.T. was transferred for post-operative care to one of the Hospital's intensive care units. While recovering there, J.T. fell out of the hospital bed, and, as a result, suffered damage to the surgically repaired cranial area, necessitating immediate ameliorative surgery.
>
> Subsequently, [the Triggs] filed suit against the Hospital in the Allegheny County Court of Common Pleas alleging, inter alia, that the Hospital was negligent in placing J.T. in a regular adult size hospital bed, due to the large spaces between the vertical side rails, which they alleged enabled J.T.'s fall. The Hospital denied negligence, and, after discovery was completed, the case was listed for trial during the March 2017 civil trial term.

Id. at ___, WL at *1 (citations and footnotes omitted).

The case eventually reached jury selection. On March 17, 2017, the calendar-control judge heard the parties' arguments and made rulings on their proposed voir dire questions and voir dire statements for the venire.[2] The court then placed the results of those discussions into the record. See N.T., 3/17/17, at 3. The calendar-control judge stated:

_____

[2] "Voir dire is a term of French legal origin which means 'to speak the truth,' and it generally describes the pretrial process of examining prospective jurors in order to obtain 'a competent, fair, impartial and unprejudiced jury.'" Trigg v. Children's Hosp. of Pittsburgh of UPMC, ___ A.3d ___, ___ n.1, No. 3 WAP 2019, 2020 WL 1932639 at *1 n.1 (Pa. 2020). The "venire" is the group of potential jurors from whom the parties remove individuals until a sufficient number of qualified jurors remain to comprise a jury.

As to the voir dire questions, the [Allegheny County] rules allow the attorneys to choose up to five additional proposed voir dire questions to put to the potential jurors.

I informed the attorneys that the local rules don't allow them to make statements in connection with these questions, and also it is my practice not to allow questions relating to the subject of how, the potential jurors feel about a particular rule of law that the attorney might bring up. Like, "Do you think that a social guest at someone's house who falls is automatically able to recover damages?" something like that. Or, "Do you think all contracts should be notarized?" something like that where the jurors preview a jurors view on what they think the law should be.

Id. at 4-5.

For two of their five questions, the Triggs wanted to ask:

[1.] The Defendant in this case is Children's Hospital of Pittsburgh of UPMC. Would you be less likely to return a substantial verdict against Children's Hospital of Pittsburgh of UPMC versus some other hospital because it is Children's Hospital of Pittsburgh of UPMC?

\* \* \* \* \*

[2.] Plaintiff is suing for unintentional harm — harm which Plaintiff contends was caused by the Defendant's carelessness. Plaintiff is not contending that anybody intended harm to occur. Would you have any difficulty rendering against a Defendant, because the Defendant did not intend to cause harm?

Trial Court Opinion, 9/7/19, at 7-8.

The calendar-control judge believed the Triggs' first "question had a strong likelihood of being confusing to the potential jurors, for a number of reasons." Id. at 7. As to the second proposed question, the judge found that

it "could only cause confusion to ask whether the jurors would have 'difficulty' returning a verdict," when they had not previously received any instructions on the law or any evidence regarding the case. Id. at 9. The court therefore barred the proposed questions in the forms that the Triggs had offered them.

Next, "40 prospective jurors were summoned . . . and voir dire was conducted in accordance with [Allegheny County] procedures." Trigg, ___ A.3d at ___, WL at *2. Court staff, rather than a judge, was present for voir dire, and the Triggs challenged three possible jurors for cause. They were Jurors No. 28, 29, and 37. Those challenges were later heard in the courtroom of the calendar-control judge, rather than in the jury-selection room. After reviewing the transcript of what transpired in the jury-selection room "and after hearing arguments from the parties, [the judge] denied [the Triggs'] motion to strike for-cause prospective jurors 28, 29, and 37." Id. at ___, WL at *3. The Triggs "then used three of their four allotted preemptory challenges to exclude these jurors from service. [They] subsequently used their final preemptory challenge to exclude another juror, thereby exhausting those challenges." Id.

The Triggs did not object to the jury selection process of the Court of Common Pleas of Allegheny County prior to or during voir dire. See N.T., 3/17/17, at 15-207. For example, they did not object when the court staff sua sponte asked questions of venire members designed "to try [to] rehabilitate the prospective juror to keep them in the venire, rather than remove the prospective juror." Triggs' Brief at 40. Nor did the Triggs object

- 4 -

when the clerks "cautioned [the Triggs'] counsel as to follow-up questioning, and at points limited [his] questions, ruling the questions were 'asked and answered.'" Id. at 43. And when "the head clerk inserted himself into the [voir dire] process and [allegedly] instructed the lawyers on the law and procedure of jury selection in the assignment room," id. at 44, again, the Triggs did not object.

After the jury had returned a defense verdict, the Triggs raised these procedural issues for the first time in their post-trial motions. See Triggs' Motion for Post-Trial Relief, 4/3/17, at 9-11.

The trial court denied post-trial relief, and this timely appeal followed.

The Triggs raise three issues on appeal:

1. Did the trial court err in denying the [Triggs'] Motions to Strike for Cause potential jurors who exhibited such bias and prejudice that they could not have been fair and should have been stricken from the panel, which required the [Triggs] to use 3 of [their] 4 [preemptory] strikes to remove these potential jurors causing obvious prejudice to the [Triggs].

2. Did the trial court err specifically when it denied the [Triggs'] request to ask voir dire questions of the venire about (1) the [Hospital] and its relationship in the community, especially in light of [the Hospital's] opening statement when these issues were placed before the jury without any voir dire examination, (2) unintentional harm, since many jurors do not understand the burden of proof and hold the plaintiff to a higher burden than is required in civil cases; and (3) generally in imposing a restriction on additional voir dire questions that they may not include any facts or law of the case.

3. Did the trial court err:

    (1)    in failing to observe the demeanor and tenor of prospective jurors or; if observation by the Court

- 5 -

wasn't being offered, in failing to assume that the demeanor and tenor of the prospective jurors exhibited extreme bias;

(2) in instructing and having the county clerk engage in rehabilitation following an expression of bias, rather than explore the bias; and

(3) in limiting [the Triggs'] Counsel's follow-up after an expression of bias by a potential juror.

Triggs' Brief at 5-6. We address each issue in turn, with the exception of the first half of issue 3(1), which our Supreme Court found the Triggs waived. See Trigg, supra.

A. The Challenges for Cause

First, the Triggs argue that the court should have stricken prospective Jurors No. 28, 29 and 37 and the failure to strike prejudiced them. Triggs' Brief at 15-23.

As the Hospital correctly states, "When a juror demonstrates a likelihood of prejudice by conduct or answers to questions, much depends on the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in the case of palpable error." Hospital's Brief at 19 (quoting McHugh v. Proctor & Gamble, 776 A.2d 266, 270 (Pa. Super. 2001)) (emphasis by Hospital). "The trial judge [was] in a much better position to evaluate the situation than this Court, because he saw the prospective jurors and heard their responses on voir dire . . . ." Linsenmeyer v. Straits, 166 A.2d 18, 23 (Pa. 1960). Therefore, "wide latitude is given to the discretion of the trial judge and, absent any showing

that the trial judge abused his discretion in this respect, his action must be sustained." Id. "An abuse of discretion is not merely an error of judgment. Rather, an abuse of discretion exists if the trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, or if it fails to apply the law or was motivated by partiality, prejudice, bias, or ill will." Ambrogi v. Reber, 932 A.2d 969, 974 (Pa. Super. 2007).

Instead of adhering to that deferential standard of review, the Triggs contend, "Once a prospective juror has made a clear statement during voir dire reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror should be disqualified as a matter of law . . . ." Triggs' Brief at 18 (emphasis added). They believe that the potential juror "cannot be rehabilitated by subsequent questioning, later reactions, or promises to be fair." Id.

The Triggs cite no authority for their proposition that the trial court or this Court should disqualify Jurors No. 28, 29, and 37, as a matter of law. We agree with the Hospital; the Triggs "have failed to articulate in [their] brief how the trial court committed an abuse of discretion." Hospital's Brief at 33. Thus, the Triggs do not persuade us that the trial court abused its discretion when it refused to strike Jurors No. 28, 29, and 37 for cause.

Their first appellate issue warrants no relief.

B.    The Triggs' Proposed Voir Dire Questions

Next, the Triggs ask whether the trial court erred when it denied their two questions for the venire and when it imposed "a restriction on additional

- 7 -

voir dire questions that they may not include any facts or law of the case." Triggs' Brief at 24.

The Triggs' argument regarding the two questions that they wanted to ask the venire suffers from the same flaw as their first argument – namely, the Triggs fail to conform their argument to our standard of review. At the outset of their brief, the Triggs acknowledge that "[t]he scope and extent of voir dire examination is within the sound discretion of the trial court and the trial court's rulings thereon will not be disturbed absent a clear abuse of that discretion." Id. at 3 (quoting Capoferri v. Children's Hosp. of Philadelphia, 893 A.2d 133, 138 (Pa. Super. 2006)). Ignoring that standard, the Triggs explain why they disagree with the calendar-control judge's decision to disallow the two questions. See Triggs' Brief at 25-32. At best, the Triggs' argument shows that reasonable minds can differ as to whether the questions were appropriate for voir dire, not that the judge's decision was "manifestly unreasonable, arbitrary, or capricious, or if it fails to apply the law or was motivated by partiality, prejudice, bias, or ill will." Ambrogi, 932 A.2d at 974.

Thus, their argument regarding the two proposed questions is meritless.

Turning to the remaining portion of the Triggs' second issue, we find several violations of the Rules of Appellate Procedure. "The issue of waiver presents a question of law, and, as such, our standard of review is de novo, and our scope of review is plenary." Trigg, ____ A.3d at ___, WL at *7.

The Triggs assert that statements from the calendar-control judge regarding the local rules and his "practice not to allow questions relating to . . . how the potential jurors feel about a particular rule of law," N.T., 3/17/17, at 4-5, "was arbitrary" and "not set forth in the local rules." Triggs' Brief at 33. The Triggs did not raise this claim of error during voir dire or in their motion for post-trial relief. See N.T., 3/17/17, at 3-17; see also Triggs' Motion for Post-Trial Relief at 3. Also, they cite no authority. Instead, they baldly claim, "By ruling that facts or law can't be questioned of a juror, the trial court was in essence handcuffing the [Triggs] to try a case without knowing whether or not the jurors had objections to the kind of case involved or how the jury was to do its job." Triggs' Brief at 33.

An appellate argument shall include "such discussion and citation to authorities as are deemed pertinent." Pa.R.A.P. 2119(a). An appellant's failure "to cite any authority supporting any argument constitutes a waiver of issues on appeal." George v. Ellis, 911 A.2d 121, 126 (Pa. Super. 2006). Also, having not raised this issue in the trial court, the Triggs may not assert it for the first time on appeal. "[I]ssues not raised in lower courts are waived for purposes of appellate review . . . ." Trigg, supra at ___, WL at *7 (citing Pa.R.A.P. 302(a)).

We therefore dismiss the rest of the Triggs' second issue as waived.

C.    Allegheny County's Voir Dire Process

Finally, the Triggs allege a panoply of procedural defects regarding the Court of Common Pleas of Allegheny County's voir dire process. See Triggs'

Brief at 34-45. Admittedly, many of these procedures are unorthodox and, arguably, may have constitutional ramifications.[3] However, as we explained above, the Triggs raised no objections to any of these procedural matters prior to or during voir dire. We therefore dismiss them all as waived. See Trigg, supra.

Judgment affirmed.

Judge Bowes joins this memorandum.

Judge Olson concurs in the result.

_____

[3] Notably, the record reveals that the voir dire in this matter was conducted by individuals identified as "Angel the Clerk" or "Head Clerk Brian." E.g. N.T., 3/17/17, at 15, 160. The Constitution of the Commonwealth of Pennsylvania reposes no judicial power in these minute clerks. Instead, it provides, "There shall be one court of common pleas for each judicial district . . . consisting of such number of judges as shall be provided by law . . . ." Pa. Const. art. V, § 5(a) (emphasis added). We do not doubt the clerks' honesty, competence, or dedication to public service, but the fact remains that the voters of Allegheny County did not elect them to the court of common pleas.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2020