## Shaffer, Appellant, v. Baylor's Lake Association, Inc.

Argued January 9, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Thomas J. Foley,* with him *John Morano,* and *Paul E. Pendel, for appellant.*

*William J. McDonald,* with him *John W. Bour, R. Bialkowski,* and *O'Malley, Morgan, Bour & Gallagher,* for appellee.

OPINION BY MR. JUSTICE BELL, May 2, 1958:

Plaintiff is the owner of an undivided 7/9ths interest in a certain dwelling and farmland abutting the southerly shores of Baylor's Lake. Baylor's Lake is a non-navigable body of water in Fleetville, Lackawanna County, Pa. In 1953 plaintiff brought this action to quiet title to the use of the waters of Baylor's Lake, claiming by prescription swimming, boating, fishing and skating rights, and also commercial boating rights. The jury returned a verdict in favor of the plaintiff. The lower Court entered judgment for the defendant non obstante veredicto, whereupon plaintiff appealed to this Court.

"In considering a motion for judgment n.o.v. it is hornbook law that the verdict winner must be given the benefit of the evidence which is most favorable to him (her or it), together with all reasonable inferences therefrom: Bream v. Berger, 388 Pa. 433, 130 A. 2d 708.": *Farmers' Northern Market Co. v. Gallagher,* 392 Pa. 221, 139 A. 2d 908. Considering the evidence in the light most favorable to plaintiff, the jury could have found that plaintiff proved the following facts.

In 1903 plaintiff's grandfather purchased the farm in question and took title in the name of his wife, Tamer J. Wiedman. The farm has a dwelling house and outbuildings, and extends along the high water mark of the lake for a distance of approximately 650 feet. Since 1903, some member or members of the Wiedman family have always held title to and possessed and occupied this property. Plaintiff's niece, Virginia Wiedman, owns the remaining undivided 2/9ths interest and is living in the property with plaintiff and plaintiff's mother.

Commencing in 1903 the Wiedman family have used Baylor's Lake in all seasons of the year. From 1903 until the present time the Wiedman family and their guests used the lake for swimming, boating and fishing during the Spring, Summer and Fall of every year—in other words, in season. Furthermore, they fished all year even in Winter when at times they had to cut holes in the ice. They also used the lake in front of their land to water their cattle from the time they purchased the farm until 1947, when they sold their cattle. In 1922 they built a stone dock into the lake and extended it after 1926. This dock has been used by them for over 21 years. An old milk house on their property was converted in 1930 into a boat house and was moved to the shore of the lake and was used inter alia by guests to change into bathing suits. The Wiedman family in the wintertime used the frozen surface of the lake for sleigh riding and for cutter riding, although the evidence on this use was meager. From 1915 to 1918 and from 1923 to 1940 the Wiedman family rented boats, but the evidence as to this commercial renting was meager and inadequate.

In 1953, fifty years after the Wiedman family commenced to use the waters of the lake abutting their farm, defendant purchased Baylor's Lake from their

predecessor in title who had acquired ownership of the lake in 1944 by a quitclaim deed. For the first time in 50 years plaintiff's right to use the lake was challenged.

Mere user of land for 21 years or more is insufficient to establish an easement by prescription. The user must be adverse, open, notorious, continuous and uninterrupted for 21 years: *Farmers' Northern Market Co. v. Gallagher*, 391 Pa., supra; *Shinn v. Rosenberger*, 347 Pa. 504, 32 A. 2d 747.

In *Miller v. Lutheran Conference and Camp Association*, 331 Pa. 241, 200 A. 646, plaintiffs brought a bill in equity to restrain defendant from trespassing on the lake. Plaintiffs acquired, by deed, boating and fishing privileges, but claimed they were entitled to bathing rights by prescription. The Court held that bathing rights could be acquired and were established under the evidence in that case, *by prescription* and that such rights were assignable. The pertinent principles of law were clearly stated by the Court (pages 246 et seq.) :

"Coming to the merits of the controversy, it is initially to be observed that no boating, bathing or fishing rights can be, or are, claimed by defendant as a riparian owner. Ordinarily, title to land bordering on a navigable stream extends to low water mark subject to the rights of the public to navigation and fishery between high and low water, and in the case of land abutting on creeks and non-navigable rivers to the middle of the stream, but in the case of a non-navigable lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water, and an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made

upon the dry land of another: Baylor v. Decker, 133 Pa. 168; Smoulter v. Boyd, 209 Pa. 146, 152; Gibbs v. Sweet, 20 Pa. Superior Ct. 275, 283; Fuller v. Cole, 33 Pa. Superior Ct. 563; Cryer v. Sawkill Pines Camp, Inc., 88 Pa. Superior Ct. 71. . .

"But, while Frank C. Miller acquired by grant merely boating and fishing privileges, the facts are amply sufficient to establish title to the bathing rights by prescription. True, these rights, not having been granted in connection with, or to be attached to, the ownership of any land, were not easements appurtenant but in gross. . . Certainly the casual use of a lake during a few months each year for boating and fishing could not develop into a title to such privileges by prescription. But here the exercise of the bathing rights was not carried on sporadically by Frank C. Miller and his assignee Rufus W. Miller for their personal enjoyment, but *systemically for commercial purposes* in the pursuit of which they conducted an extensive and profitable business enterprise. The circumstances thus presented must be viewed from a realistic standpoint. . .

"We are thus brought to a consideration of the next question, which is whether the boating, bathing and fishing privileges were assignable by Frank C. Miller to Rufus W. Miller. What is the nature of such rights? In England it has been said that easements in gross do not exist at all, although rights of that kind have been there recognized. In this country such privileges have sometimes been spoken of as licenses, or as contractual in their nature, rather than as easements in gross. These are differences of terminology rather than of substance. We may assume, therefore, that these privileges are easements in gross, and we see no reason to consider them otherwise. It has uniformly been

held that a profit in gross—for example, a right of mining or fishing—may be made assignable: Funk v. Haldeman, 53 Pa. 229; Tinicum Fishing Co. v. Carter, 61 Pa. 21, 39; see cases cited 19 C.J. 870, note 25. . .'

"Summarizing our conclusions, we are of opinion (1) that Frank C. Miller acquired title to the boating and fishing privileges by grant and he and Rufus W. Miller to the bathing rights by prescription; (2) that he made a valid assignment of a one-fourth interest in them to Rufus W. Miller; . . ."

In *Loughran v. Matylewicz*, 367 Pa. 593, 81 A. 2d 879, plaintiff brought a bill in equity to restrain defendants from interfering with his lawful possession of Baylor's Pond. Defendants contended that they had acquired by adverse user a use of the pond for commerical purposes, to wit, commercial boating for over 21 years. The Court, after quoting from *Miller v. Lutheran Conference and Camp Association*, 331 Pa., supra, said (pages 597, 599): "An easement in gross is a mere personal interest in, or right to use, the land [or water] of another . . . It is clear that the mere fact that a man is owner of a contiguous piece of property, whether land or water, does not confer on him a right to trespass on the land or water of his neighbor. . . 'the *casual* use of a lake during a few months each year for boating and fishing could not develop into a title to such privileges by prescription'. . .

"It is clear that there was here only casual and sporadic use of the pond by appellants, and such could never ripen into an adverse possession or easement in gross."

In Corpus Juris Secundum, Vol. 2, Adverse Possession, §130e, the rule is thus correctly stated: "Members of Family. Where a family has lived in continuous adverse possession of land, the title being in one of them

or in different members of the family at different times, they stand in such privity one to another that the tacking of their possessions is permissible."*

It is often difficult to prove the exact extent or boundaries of an *ancient* right or easement, and consequently the law is realistic and does not require the same minutiae of proof as is required in cases where ample proof is or should be available: *Hostetter v. Commonwealth*, 367 Pa. 603, 606, 80 A. 2d 719.

The nature of the easement, whether it is seasonal, periodical, or for all periods of the year, the frequency and the extent of the user, its definiteness, and its location in city or rural districts are important factors in a determination of whether an easement exists and exactly what rights have been acquired thereunder. For example, in order to acquire an easement to swim or to water cattle, claimants do not have to prove that they swam in winter, or watered their cattle when the lake was frozen or covered with ice, or that they ice-skated in summer, or that in summer they swam 24 hours each day, or that each day they swam 100 yards off shore. The oldest easement recognized by law is probably a right-of-way—a footpath across a neighbor's property. At the end of 25 or 30 or 50 years, that footpath, by passage of feet and time, will be wider than in the first or fifth or tenth year it was trod. Yet inability to measure the exact width of the footpath for 21 or more years will not defeat a prescriptive right-of-way over this footpath which has been acquired by adverse user for 21 years, nor is the law so unreasonable as to require that the path be used and trod 24 hours each day, or the same hour each day.

---

* See to the same effect American Jurisprudence, Vol. 56, §333, page 771; Restatement of the law of Property, §464, Tacking of Adverse Uses.

Judge EAGEN ably stated the law but we differ as to some of his conclusions therefrom.

Applying the rule of reason to the facts in the instant case, we find that plaintiff has established (1) a prescriptive right and is entitled to swim and to boat and to fish within a reasonable distance of her land; (2) a prescriptive right to her present dock, and (3) a prescriptive right to water her cattle in front of her land. These rights do not include the right to use any part of the lake for commercial boating or other commercial purposes, since prior use for such purposes, even though adverse, was merely casual and sporadic.

The judgment is reversed, the record is remitted to the Court below with directions to enter an appropriate decree in accordance with this opinion; costs to be equally divided.