Kurtz *v.* Philadelphia Transportation Company, Appellant.

Argued November 19, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Bernard J. Smolens,* for appellant.

*John J. O'Brien, Jr.,* and *Francis X. O'Brien,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 5, 1959:

The plaintiff in this case, Andrew C. Kurtz, was seriously injured when the 1951 Mercury automobile which he was driving was struck by a street car of the defendant Philadelphia Transportation Company. The jury returned a verdict for the plaintiff and the defendant has appealed, asking for judgment n.o.v., or, alternatively, a new trial, alleging errors in the judge's charge.

Since the plaintiff won the verdict we are required to peruse the pages of the record under a lamp which resolves all doubts, contradictions and ambiguities in favor of the plaintiff and obliterates all inferences ad-

verse to him. We do this because the jury, the fact-finding tribunal, has so interpreted the evidence and, in the absence of any proof of bias, caprice, or prejudice on their part, their conclusions are binding.

With this criterion in mind, we find that the following misfortune of the streets occurred December 25, 1950, on Rising Sun Avenue in Philadelphia, close to a point where that thoroughfare crosses Tacony Creek and then heads in a northeastward direction. At about 7:30 of that Christmas morning, Kurtz was moving northwardly on the aforesaid Rising Sun Avenue which has two street car tracks in its center, when his Mercury, after a few admonitory jerkings, sputterings and gaspings, stalled just where Rising Sun Avenue, after spanning Tacony Creek, makes a rather sharp turn to the right and climbs a ten per cent grade toward Adams Avenue which intersects it.

The Mercury, which had been traveling in the right-hand or northbound car track, drifted toward the center of the street and eventually stopped within what is popularly referred to as the "dummy," the space between the two car tracks, with its nose extending over to the left or southbound car track. Kurtz worked with the obstreperous engine, got it started once more, and endeavored to get back to the northbound track. But still all was not well. The engine lagged again. The car moved enough to get its nose pointed toward the northbound track, but its left flank remained exposed to traffic passing on that side.

At this moment Kurtz perceived 400 feet away on the southbound track a highspeed, streamlined street car swaying toward him at the rate of 40 miles per hour. He urged his Mercury forward, its wheels made a few determined turns, but the dying engine could carry it only ten feet while the trolley car relentlessly bowled forward over the intervening 400 feet without

diminution of speed. The inevitable occurred. The front of the street car smashed into the left center of the Mercury, and, amid the resulting broken bones, spurting blood, and twisted metal, a lawsuit was born.

The appellant defendant company contends that the verdict of the jury should be reversed on the ground that the plaintiff was guilty of contributory negligence, as a matter of law, but neither in appellant's brief or in oral argument was any such contributory negligence made apparent. Contributory negligence is not a shadow falling from the events of the main transaction; it is not a vapor rising from the impact and fracas of a collision; it is not a mere inference or assumption to be breathed in with the air like fumes rising from spilled gasoline in the street. Contributory negligence is a substantive reality which must be established by the defendant by a preponderance of the evidence, even as the plaintiff must prove negligence by the same measure of proof.

No plaintiff goes to trial carrying the millstone of contributory negligence around his neck. It is the defendant who must yoke the plaintiff with that burden. Nor may he ask the Court to declare the existence of contributory negligence as a matter of law unless evidence of it is so positive that, like a mountain against the horizon, "reasonable persons cannot disagree as to its existence."*

What contributory negligence was silhouetted against the horizon of the plaintiff's case that reasonable persons could not disagree as to its existence? Was it the stalling of the plaintiff's automobile on the trolley tracks? There was no evidence that Kurtz could have foreseen that his Mercury, like a balky mule, would stop in the middle of the street and refuse to

* *Ashcraft v. Hussey and Company*, 359 Pa. 129.

budge, entirely impervious to command, entreaty or manipulation. Kurtz's Mercury was a new car, having come off the assembly lines even before the year whose date it bore. Kurtz had no reason to assume, lacking any sign to the contrary, that it would not operate with every piston pumping and every gear turning in perfect coordination with every other part of its inspection-tested machinery. Thus, unless there came to light some symptom of improper functioning which Kurtz chose to ignore, he cannot be charged with anticipating that a 1951 automobile would break down while it was still 1950.

In the case of *Hinton v. Pittsburgh Rwys. Co.,* 359 Pa. 381, 385, the plaintiff had trouble with his automobile as Kurtz had trouble. It stalled and, like Kurtz's, it was struck by a street car. The defendant there urged contributory negligence. We held there was no contributory negligence which could be declared so, as a matter of law. "Plaintiff was stopped on defendant's track by circumstances beyond his control. When his motor stalled and his vehicle continued to drift along, he attempted to start the motor again while the car was moving under its own momentum. The fact that the automobile came to a dead stop without plaintiff attempting to guide it off the tracks to the concrete portion of the highway was not such action as could be classified as contributory negligence *as a matter of law.*"

*Dodson v. Philadelphia Trans. Co.,* 366 Pa. 287 was another "stalling" case. There, the plaintiff was following another automobile which suddenly stopped before him. The plaintiff swung to his left to avoid crashing into the rear of the preceding car and, in doing so, got on to the dummy where his automobile stopped dead. While he was attempting to revive it, it was struck by a street car which for 200 feet had a

full view of its helpless state. We there also held that the question of possible contributory negligence was one for the jury since the plaintiff "did not voluntarily drive or leave his automobile in a position whereby it might be hit by an oncoming street car."

Neither of these cases was as extreme as this one where the street car motorman had a 400-foot view of the plaintiff's powerless plight, a plight not of his own choosing.

It is also to be noted that the projection of the rear portion of the plaintiff's automobile over the western rail of the southbound track was only a condition of the occurrence of the accident and not a juridical cause of the collision. In the case of *McFadden v. Pennzoil Company*, 341 Pa. 433, 436, this Court said: "But, in order to defeat recovery of damages for injuries arising from the negligence of another, the injured person's negligence must have been a juridical cause of the injury, and not simply a condition of its occurrence."

Defendant's counsel has called our attention to answers made by the plaintiff in cross-examination which seem to be at variance with what he said in direct examination. Counsel argues that on the basis of this variation, the defendant is entitled to judgment n.o.v. because some of the answers would seem to support the proposition that he was in a safe position when his automobile came to a stop the first time. But it was for the jury to reconcile these alleged contradictory statements, if possible, and if not, to decide which one was controlling. This question arose in the case of *Smith v. Flannery*, 383 Pa. 526, 528, 530, where Chief Justice STERN said: "But even if there was any discrepancy in his testimony it was for the jury to reconcile the statements. In Ely v. Pittsburgh, Cincinnati, Chicago & St. Louis Railway, 158 Pa. 233, 27 A. 970,

where the facts in this regard were strikingly similar to those here present, Mr. Justice MITCHELL, speaking of the plaintiff's testimony, said (pp. 237, 238, A. p. 971) : 'This testimony was contradictory, and the net result of it by no means clear. On part of it he was plainly entitled to go to the jury, on the other part equally plainly he was not. Under these circumstances the case must go to the jury, whose province it is to reconcile conflicting statements, whether of the same or different witnesses, or to draw the line between them and say which shall prevail . . . But in cases like the present, the plaintiff is not required to disprove contributory negligence, but only to make out a case clear of it. Unless, therefore his negligence appears affirmatively, he is entitled to go to the jury on the general presumption against it, and so likewise where the evidence is conflicting as it was here.' "

The defendant contends that if unsuccessful in reversing the verdict, it is entitled to a new trial on the basis that the Trial Judge failed to define negligence to the jury. We fail to find any such failure. On the contrary, the charge speaks with the lucidity of a teacher addressing his students or a parent admonishing his children. In his graphic explanation of what constitutes negligence, the Trial Judge did not employ the usual stereotyped language which defines it. As clearly as a simple lesson in arithmetic he explained to the jury the duty a street car company undertakes as a public carrier and what deviation from a fulfillment of that duty will make it liable in damages. Said the Judge: "Now, it is the duty of the operator of any vehicle, and certainly the duty of an operator of a trolley car, always to operate the trolley car with due care under all the circumstances. A trolley car, unlike a motor vehicle, operates on rails. It does not have the choice of staying or leaving the rails according to cir-

cumstances; it operates on the rails. The operator of a trolley car has the duty not to injure or strike anyone on the tracks, providing that the individual car or object on the track was there sufficiently long enough for him to appreciate the situation.

"If it was within his power in the exercise of due care to bring his car to a stop and thus avoid striking the plaintiff, he should have done so. If you find the plaintiff was on the track, as he said he was stalled and helpless, it would amount to a temporary emergency and then have the motorman proceed in disregard of apparent danger to the driver of the automobile and strike it, then he was negligent and the defendant is liable."

While we do not recommend this charge, or, for that matter any other, as a model charge, since so much depends on the particular circumstances of the case, it can be said that an exposition of this kind is more apt to impart to a jury what is expected of a street car motorman than the classical definition of negligence offered by Judge COOLEY in his work on Torts (3d Ed. pp. 1324-25), viz.: ". . . the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury."

Then there is the definition by Wharton in his work on Negligence, section 3, as follows: "Negligence, in its civil relations, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as immediately produces, in an ordinary and natural sequence, a damage to another."

Both of these definitions are brilliant but, in the eyes and ears of the average jury they might be more ecliptical than illuminating. A judge's charge should appeal to a jury's intelligence, not to his dictionary

at home. A trial judge should aim at enlightening the persons who are to be guided by it. He should not raise his sights above the jury box and aim at the high court bench, loading his charge with language which will scintillate in stratospheric atmosphere and dazzle elevated reviewers, but accomplish only confusion on the level where it is intended to lead and direct.

The Trial Judge's charge in the case at bar, like a seasonable day in the month of September, was clear and fair. In pointing out that the motorman was not expected to do what would be unreasonable under the circumstances, the Judge said: "On the other hand, if the true facts are that the plaintiff himself for any reason found himself in the pathway of the oncoming trolley car and also found that as he did that, the operator did not have the opportunity to avoid the accident because he was already too close to the automobile, or the automobile was too close to him, then, of course, you cannot find for the plaintiff because there would be no negligence on the part of the defendant."

The defendant also states that the Trial Judge did not charge on proximate cause. Although the Judge, it is true, did not use that particular phrase he adequately covered the concept of proximate cause. A reading of the charge quite conclusively discloses that the Trial Judge made it very clear to the jury that the defendant's negligence had to be the moving or producing cause of the accident before the plaintiff could recover. At the end of his charge he emphasized the rights of the defendant in the controversy: "Now, as I am about to conclude the charge of the Court, I will repeat once more that the principal question in this case is not the injuries or pain and suffering. The principal question is how did this accident happen? Was it due and due exclusively to the negligence of the operator of the trolley car? Was it due to the neg-

ligence of both of them—the operator of the trolley car and the operator of the automobile, or the plaintiff? Was it due only to the negligence of the plaintiff himself?

"In the last case your verdict should be for the defendant. If the plaintiff was careless, he is out of Court and you are not concerned with damages.

"If the accident was the result of the joint carelessness of both operators, the plaintiff is again out of Court. Only in the event that the plaintiff was injured as the result of the carelessness of Mr. Sheely, the operator of the trolley car, may you return a verdict in favor of the plaintiff."

After the charge, defendant's counsel asked for further instruction: "One other thing that I would respectfully ask your Honor to charge the jury is that if the plaintiff after his automobile had stopped for the first time, in the northbound track in a position on the track, and then voluntarily starting his car and drove into the southbound trolley, that would be negligence on the part of the plaintiff."

To this, the Judge replied: "I so charge the jury that if that is all that is in the case and if he was in the position where he went over into the pathway of the trolley car he is negligent and cannot recover."

The case was well tried on both sides, the Judge ruled properly on all questions of law, and his charge neglected no essential of the law involved in the litigation. The judgment of the court below is accordingly affirmed.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

" 'In considering a motion for judgment n.o.v. it is hornbook law that the verdict winner must be given the benefit of the evidence which is most favorable to

him (her or it), together with all reasonable infer-ences therefrom: Bream v. Berger, 388 Pa. 433, 130 A. 2d 708.': Farmers' Northern Market Co. v. Galla-gher, 392 Pa. 221, 139 A. 2d 908.": *Shaffer v. Baylor's Lake Association, Inc.*, 392 Pa. 493, 494, 141 A. 2d 583.

My understanding of the facts is different from that which is set forth in the majority opinion. When plain-tiff's automobile stalled for the first time, the trolley car was about 450 feet away. Plaintiff was in the right-hand lane of Rising Sun Avenue, a two-way street, which has northbound and southbound trolley tracks in the center. When plaintiff succeeded in get-ting his sputtering automobile restarted and came to the sharp bend of the street, he drove his automobile in the most negligent imaginable way from his safe right-hand lane across the northbound trolley tracks into the center strip which separates the northbound and southbound trolley tracks, when the approaching trolley car, coming down the hill, was 20 to 50 feet away. Plaintiff's car did not "drift" into the trolley as the majority opinion inadvertently asserts.

Plaintiff testified as follows: "By the Court: Q. The question is a simple one. Did you have your hand on the steering wheel as you were moving? A. Yes. Q. It can spurt and you can still drive your car? A. Yes. By Mr. Smolens: Q. As you moved that 10 feet or whatever it was, you were guiding your car? A. Yes. Q. You guided it eventually until you came into con-tact with the southbound trolley car? A. Yes."

This was clearly gross contributory negligence for which a judgment non obstante veredicto should be en-tered.

Mr. Justice BENJAMIN R. JONES joins in this dis-senting opinion.