J-A19022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMA AMERICAN MARKETING ASSOCIATION INC, AMBLER CROSSINGS DEVELOPMENT PARTNERS #1 LLC AND ARNOLD FRUMIN | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 3319 EDA 2019 |
| REDEVELOPMENT AUTHORITY OF THE COUNTY OF MONTGOMERY, AMBLER BH DEVELOPMENT PARTNERS LP, AMBLER BH LLC, AMBLER CROSSINGS DEVELOPMENT PARTNERS LP, ROBERT BAST, WILLIAM L. BAST, ESTATE OF ROBERT L BAST, RODERICK W. GAGNE, MAPLE AVENUE PARK INC., MAPLE AVENUE PARK PARTNERS LLP, REDEVELOPMENT AUTHORITY OF MONTGOMERY COUNTY NEW MARKET CORPORATION, SUMMIT REALTY LLC, JOHN ZAHARCHUK | : : : : : : : : : : : : : : : : | |

Appeal from the Judgment Entered November 1, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): #2014-04500

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED DECEMBER 21, 2020**

AMA/American Marketing Association ("AMA"), Ambler Crossings

Development Partners #1, LLC ("ACDP#1"), and Arnold Frumin appeal from

the judgment entered against them.[1] Appellants' arguments mainly challenge the trial court's findings of fact. We affirm based on the trial court's opinion. **See** Pa.R.A.P. 1925(a) Op., filed 1/13/20.[2]

AMA is a corporation with a sole shareholder, Arnold Frumin. Frumin also was a member of ACDP#1. Appellants instituted this suit and filed a Complaint alleging, in general terms, that an agreement existed to obtain funds from the Redevelopment Authority of Montgomery County ("RDA") to redevelop property. Defendants included the RDA, Robert Bast, and two entities Bast controlled, Maple Avenue Park Partners LLP ("MAPP LLP") and Maple Avenue Park, Inc. ("MAPP Inc."). Frumin and Bast were members of ACDP#1. The Complaint contained seven counts and asserted claims of breach of contract, tortious interference in contractual relations, and breach of fiduciary duty. It also sought a declaration that AMA had certain easement rights and asked the court to enjoin interference with those rights.

The case proceeded to trial and at the close of Appellants' case in chief, the trial court entered a compulsory nonsuit on several counts. Following trial, the court rendered a decision against Appellants on their remaining claims.

---

[1] Appellants purported to appeal from the October 2, 2019 order denying post-trial motions. However, in a civil case, the appeal lies from the judgment entered following the denial of post-trial motions. **See Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.**, 781 A.2d 1263, 1266 n.3 (Pa.Super. 2001). We have corrected the caption accordingly.

[2] The trial court incorporated by reference its findings of facts and conclusions of law from its 31 page decision, dated September 6, 2019, following a six day non-jury trial. **See** 1925(a) Op. at 1, 2; Decision, dated 9/6/19.

Appellants filed post-trial motions that included a request to remove the nonsuits. The trial court denied the post-trial motions, and Appellants entered judgment and filed this appeal. They raise the following issues:

1. Did the trial court commit an error of law denying AMA's request for declaratory relief that the defendants' development constituted a breach of the easement in Exhibit P-99?

2. Did the trial court commit an error of law in finding that BAST/MAPP and Frumin/AMA did not have an agreement to obtain $5 MM in RACP funds through the entity ACDP#1?

3. Did the trial court commit an error of law in finding that the RDA did not enter into a subgrant agreement with ACDP#1?

4. Did the trial court commit an error of law in finding that developing defendants did not tortiously interfere with ACDP#1's agreement with the RDA?

5. Did the trial court commit an error of law in finding that Zaharachuk and his entities did not tortiously interfere with the agreement between BAST/MAPP and Frumin/AMA?

6. Were the determinations of the trial court contrary to and against the weight of the evidence?

Appellants' Br. at 4.

On review of a judgment rendered following a bench trial, we determine "whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." **Bank of N.Y. Mellon v. Bach**, 159 A.3d 16, 19 (Pa.Super. 2017) (quoting **Stephan v. Waldron Elec. Heating and Cooling LLC**, 100 A.3d 660, 664-65 (Pa.Super. 2014)). We give a judge's findings of fact the same weight and

- 3 -

effect on appeal as a jury verdict, and we consider the evidence in a light most favorable to the verdict winner. *Id.* We reverse the court's factual findings only if the record does not support them or if the court based them on an error of law. *Id.* However, as to questions of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

In their first issue, Appellants claim that the trial court erred in denying the request for a declaration that the development constituted a breach of an easement. Appellants' Br. at 15. Appellants cite Plaintiff's Exhibit 99 ("P-99"), which allegedly displayed a driveway easement. *Id.*

The trial court determined that "[i]n order to show that their easement right or right of access had been unlawfully blocked, AMA and Frumin had the burden of showing the location of the easement or access route." 1925(a) Op., filed 1/13/20, at 10. The court concluded that the evidence did not establish the easement because P-99 "was mostly illegible and plainly insufficient to establish the boundaries of any such rights." *Id.* It explained that there was "[n]o metes-and-bounds description of any easement or right of access" or any "map or diagram presented that established the location of [AMA's] asserted property rights." *Id.* On review of P-99, we conclude that the court's findings are supported by the record and find no error of law.

Next, Appellants argue that the trial court erred in finding that Bast and Frumin did not have an agreement to form ACDP#1. Appellants' Br. at 17. They maintain that based on the doctrine of necessary implication, "Bast and Frumin had agreed to form an entity, ACDP#1 to be the Sub-Grantee and

execute the agreement for the [redevelopment] funds with the RDA and divide the access to those funds equally." Appellants' Br. at 18. Thus, Appellants argue that the trial court erred in failing to applying the doctrine of necessary implication in coming to its conclusion that no agreement existed between Bast and Frumin to form ACDP#1.

The doctrine of necessary implication enables a court, in the absence of an express contract provision, to infer that the parties agreed "to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made," and not to do "anything that would destroy or injure the other party's right to receive the fruits of the contract." **Somers v. Somers**, 613 A.2d 1211, 1214 (Pa.Super. 1992) (citation omitted). "Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent." **Stamerro v. Stamerro**, 889 A.2d 1251, 1259 (Pa.Super. 2005) (quoting **Palmieri v. Partridge**, 853 A.2d 1076, 1079 (Pa.Super. 2004)). However, the doctrine is not a means for overriding a contract's express provisions. **Id.**

Here, the trial court concluded that "the discussions between Bast and Frumin never matured to the point of a binding contract between them." 1925(a) Op. at 3. The trial court pointed out that although Bast signed an agreement to distribute funds received from the RDA ("the Sub-Grant Agreement"), he listed "seven conditions to be met before his signed copy of the Sub-Grant Agreement could be delivered to the RDA," including "Bast's

review of the formation documents for ACDP#1 and review of the application of the [Pennsylvania Office of the Budget ("OB")] for a change of the name of the subgrantee." *Id.* at 2. The court found as facts that Frumin did not satisfy Bast's conditions for delivery of the Sub-Grant Agreement, but nonetheless "signed the Certificate of Organization for ACDP#1 and had it filed with the Department of State." *Id.* The court further found that he did so "without authorization from Bast . . . and without sending to Bast two documents requiring his signature- the Limited Liability Operating Agreement for ACDP#1 and the Authorization to File a Certificate of Organization." *Id.* at 2-3. The record supports the court's findings and we find no error of law.

Appellants next contend that there was a sub-grant agreement between RDA and ACDP#1. The trial court rejected this claim as "contrary to the documentary record." 1925(a) Op. at 5. The court first acknowledged that there were two signed sub-grant agreements. The first was signed by Frumin only and "between RDA and [Ambler Crossings Development Partners, LP], not ACDP#1." *Id.* The second was signed by Bast, "pending the satisfaction of the conditions in Bast's Memorandum of Understanding." *Id.* The second version was purportedly between RDA and ACDP#1, as Frumin signed on behalf of ACDP#1. However, the court found that when Bast signed the second version, he "did not intend for his signature to be effective until his express conditions had been satisfied." *Id.*

Furthermore, the court concluded that under the grant agreement, RDA could not "enter into a subgrant without the prior written consent of the OB."

- 6 -

*Id.* at 6. Since the OB authorized a sub-grant with ACDP, not ACDP#1, the trial court concluded that "there was no effective Sub-Grant Agreement between ACDP#1 and the RDA." *Id.* Upon a review of the record and the parties' briefs, we conclude that the record supports the trial court's findings of fact and it did not commit an error of law in rejecting this claim.

Appellants also argue that the trial court erred in determining that the developing defendants did not tortiously interfere with ACDP#1's subgrant agreement with RDA. As we have concluded that the trial court did not err in concluding that no such agreement existed, we reject this claim.

Appellants further argue that the trial court erroneously concluded that the developing defendants did not tortiously interfere with the alleged agreement between Bast and Frumin. Like the previous issue, this issue fails as the trial court properly concluded that no such agreement existed.

For its final claim, Appellants maintain that the trial court's conclusions were against the weight of the evidence. Appellants provide no argument on this issue. They therefore waived it. *See* Pa.R.A.P. 2119(a); *Umbelina v. Adams*, 34 A.3d 151, 161 (Pa.Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011). After a review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of the Honorable Jeffrey S. Saltz.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/21/20</u>

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

AMA/AMERICAN MARKETING ASSOCIATION, et al. :     NO. 2014-04500
                                               :     Superior Court No. 3319
                    vs.                        :     EDA 2019
                                               :
REDEVELOPMENT AUTHORITY OF THE COUNTY          :
OF MONTGOMERY, et al.                          :

## OPINION

**SALTZ, J.**                                            **January 13, 2020**

## I.     PROCEDURAL HISTORY

This dispute arises from a complex series of agreements and aborted agreements arising from a legislative authorization of financial assistance for the development of environmentally contaminated privately owned real estate in the Borough of Ambler. After a six-day non-jury trial and extensive post-trial briefing, this Court issued a Decision on September 6, 2019. The Decision, extending for thirty-one pages, set forth Findings of Fact and Conclusions of Law and ultimately found in favor of Defendants on Counts I through V of the Plaintiffs' Complaint and in favor of Plaintiffs on the Counterclaims asserted against them. On the same date, the Court issued an Order confirming its rulings during the trial granting a compulsory nonsuit against Plaintiffs on Counts VI and VII. Plaintiffs subsequently filed a motion for post-trial relief, which was denied by Order of October 2, 2019.

On November 1, 2019, Plaintiffs filed a praecipe to enter judgment on the Court's Decision, together with a timely Notice of Appeal to the Superior Court. On November 25, 2019, Plaintiffs filed the "Plaintiffs' Statement of Matters Complained of on Appeal Pursant [sic] to Pa. R.A.P. 1925(b)" ("Statement of Matters"). The present Opinion is being filed in accordance with Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. In order to

1

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

avoid repetition, this Opinion incorporates by reference the Findings of Fact and Conclusions of Law in the Court's prior Decision, including the defined terms set forth in the Decision. This Opinion is thus a supplement to the Decision and is limited to addressing the seven errors asserted in Plaintiffs' Statement of Matters.

## II.     ERRORS ASSERTED ON APPEAL

### A.     No Agreement Between Bast/MAPP and Frumin/AMA

Plaintiffs first assert that the Court erred in finding that there was no agreement between Bast or MAPP, on the one hand, and Frumin or AMA, on the other hand, for the formation of ACDP#1 to receive $5 million in RACP funds. The Court found from the evidence presented that Frumin and Bast initially cooperated in the development of the AMA and MAPP Properties, that they explored the possibility of acquiring ACDP for this purpose, that after rejecting this idea they discussed forming ACDP#1 but never reached agreement on doing so, and that they ultimately decided to abandon their joint efforts and go their separate ways.

Specifically, Bast never agreed that Frumin should consummate the formation of ACDP#1 and that the new entity should enter into a Sub-Grant Agreement with the RDA. To the contrary, after signing his copy of the Sub-Grant Agreement, he returned it to Frumin or Frumin's counsel with a "Memorandum of Understanding to Frumin" dated August 17, 2011, listing seven conditions to be met before his signed copy of the Sub-Grant Agreement could be delivered to the RDA. These conditions included Bast's review of the formation documents for ACDP#1 and review of the application to the OB for a change of the name of the subgrantee. (P-80.) Nevertheless, on the next day, August 18, 2011, Frumin signed the Certificate of Organization for ACDP#1 and had it filed with the Department of State. He did so without authorization from Bast, who had not yet reviewed the formation documents or any name-change

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

application to the OB, and without sending to Bast two documents requiring his signature — the Limited Liability Operating Agreement for ACDP#1 and the Authorization to File a Certificate of Organization.

It is true that Frumin and Bast had an informal understanding that they would divide between themselves (or their companies) the $5 million in RACP funds that they anticipated receiving. The details of that understanding, however, were never developed and agreed to between them. To the contrary, Bast's Memorandum of Understanding made clear that, until the specified conditions were met, he was not prepared to make a contractual commitment to Frumin. In particular, Bast's execution of the Sub-Grant Agreement was qualified by the proviso in his Memorandum that the Agreement was not to be delivered to the RDA until his conditions had been satisfied. Thus, Bast's execution of the Sub-Grant Agreement did not indicate a contractual intent to be legally bound at that time.

In short, the evidence was compelling that the discussions between Bast and Frumin never matured to the point of a binding contract between them.

## B. The Effect of the Agreement of Frumin and Bast to Part Ways

As the Court made clear in its Decision, even if there was a contract between Frumin and Bast (or their companies), it was rescinded by their agreement, reached in October 2011 and reconfirmed in May 2012, to go their separate ways. In their Statement of Matters, Plaintiffs acknowledge that Frumin and Bast agreed to develop the AMA and MAPP Properties separately, but they contend that the commitment to divide between them the anticipated $5 million in RACP funds survived that agreement. Plaintiffs' contention is mistaken for several reasons.

3

First, as explained above, the discussions between Frumin and Bast to divide the RACP funds was an informal understanding — a working assumption that would gel into a binding agreement only at such time as the details were filled in and agreed to. That time never arrived.

Of equal importance, Plaintiffs' interpretation of the agreement to part ways is based on unrealistic hair-splitting: it argues that even though Frumin and Bast agreed to abandon the joint development of their parcels, they still intended to share evenly the $5 million in RACP funds. If Frumin and Bast had intended, despite their agreement to proceed separately, to nevertheless maintain a continuing binding commitment to share in the RACP funds, they surely would have expressed that ongoing obligation. The written communications between them reflect no such distinction. To the contrary, on November 2, 2011, Bast confirmed to Frumin that:

> we have no obligations *whatsoever* to one another with respect to the development of our contiguous parcels of land off Maple Avenue in the Borough of Ambler, Montgomery County, PA. Therefore, each of us is free to proceed separately with the future use and development of our said separate parcels. We may, of course, take such actions with respect to such development which we may both agree, in writing, to be in our mutual best interests. [D-93 (emphasis added).]

Bast did note a limitation on their agreement — i.e., that they may take future joint actions that they agree to be mutually beneficial. Significantly, he did not add a further limitation that the RACP funds would still be divided between them.

Even after the RDA urged Frumin and Bast to reconsider separating and instead to enter a tri-party agreement with Zaharchuk, they concluded that they would nevertheless sever their ties. On May 7, 2012, following the collapse of negotiations on a tri-party agreement, Bast reconfirmed in writing that there were "no ongoing contractual agreements or arrangements" between them. (D-126.)

4

Thus, the Plaintiffs' position that Frumin and Bast not only entered into a binding contract to divide the RACP funds, but that the contract survived their subsequent agreement to go their separate ways, is not supported by the evidence.

## C.    No Effective Sub-Grant Agreement with RDA

Plaintiffs' assertion of a legally effective Sub-Grant Agreement between the RDA and ACDP#1 is contrary to the documentary record. As set forth in detail in the Court's Decision, two different versions of a purported Sub-Grant Agreement were signed in August 2011. (P-76.) The first version, signed by Frumin, was between the RDA and ACDP, not ACDP#1. Frumin signed it on behalf of ACDP, but he had no authority to do so.[1] *See, e.g., Walton v. Johnson*, 66 A.3d 782 (Pa. 2013) (contract signed by purported agent who lacked authority is unenforceable).

The second version, signed by Bast, was delivered by Bast to Frumin or his counsel for safekeeping, pending the satisfaction of the conditions in Bast's Memorandum of Understanding. It therefore should not have been delivered to the RDA, and Frumin cannot enforce a purported Agreement that he had no authority to deliver to the other party to the Agreement. Further, while this second version was purportedly between ACDP#1 and the RDA, Frumin did not have Bast's authority to form ACDP#1, again until the conditions in the Memorandum of Understanding had been met. In short, the signer of the second version did not intend for his signature to be effective until his express conditions had been satisfied. Frumin could not override Bast's intention by delivering the document to the RDA prematurely and without authorization.

---

[1] At an earlier point in his dealings with the RDA, Frumin had confirmed the willingness of Zaharchuk to transfer ACDP to him and Bast. But in March 2011, by the time that the Sub-Grant Agreements were signed, Frumin and Bast had abandoned that approach and decided instead to create a new entity. (P-35; Findings of Fact, ¶¶ 91-95.)

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Further, it was clear from the evidence that the RDA contemplated signature of the Sub-Grant Agreement by both Frumin and Bast,[2] and that Frumin understood that both signatures were required. Although each of them signed a version of the Sub-Grant Agreement, the two versions were inconsistent. Obviously, the requirement that both individuals sign the Agreement meant that both of them would sign the *same* Agreement.

Finally, the purported Sub-Grant Agreement was not legally effective under the terms of the overall Grant Agreement between the OB and the RDA. Under Article 4 of the Grant Agreement, the RDA may not enter into a subgrant without the *prior* written consent of the OB. (P-2, p. 5.) Pursuant to Special Condition 12 of the Grant Agreement, the OB at the time had authorized a subgrant only with ACDP, not ACDP#1. (P-2, p. 39.) Contrary to Plaintiffs' position, the RDA did not have an obligation to obtain such prior consent from the OB. Rather, it was apparent from the manner in which the RDA had prepared the Sub-Grant Agreement that it viewed the subgrantee as ACDP and not ACDP#1. Indeed, Frumin first notified the RDA that "we are operating under the name Ambler Crossings Development Partners #1 LLC" only after the RDA had countersigned both versions of the Sub-Grant Agreement. (P-77; P-91.)[3]

For these reasons, the Court found that there was no effective Sub-Grant Agreement between ACDP#1 and the RDA.

---

[2] The RDA thought at the time that Frumin and Bast were participants in ACDP. (Findings of Fact, ¶ 100.)

[3] This is not to suggest that the RDA's conduct was perfect. The Board resolution authorizing the RDA to enter into the Sub-Grant Agreement identified the subgrantee as "Ambler Crossings Development Partners," without an "LP" at the end. (D-68.) The printed Sub-Grant Agreement referred to the subgrantee as "Ambler BH Development Partners, LP," and a correction of "BH" to "Crossings" was made by hand. (P-76; N.T. (2/6/19) Sweet pp. 154:21-155:1, 155:7-12.) After the RDA received the two versions of the signed Sub-Grant Agreement, one of which purported to change the subgrantee from ACDP to ACDP#1, the Chairman of the RDA, Paul B. Bartle, countersigned both of the inconsistent versions. Nevertheless, the fact remains that, for reasons wholly unrelated to the RDA's inattention to detail, ACDP#1 never entered into a legally effective Sub-Grant Agreement, on all of the grounds discussed above.

## D.     Impact of Environmental Issues

Plaintiffs challenge "the Court's decision . . . that the environmental issues with the AMA property would have precluded its development." (Concise Statement, ¶ 4.) To be clear, the Court did not make such a finding. Rather, it found that because of the ongoing environmental problems at the AMA Property, Bast and Zaharchuk reached the conclusion that Frumin and his developer and contractor, Caddick, were not able to meet the environmental challenges. Bast and Zaharchuk determined in October 2011 that the AMA Property could not qualify for RACP funding and the overall project could not successfully proceed with the participation of Frumin and AMA. (Findings of Fact, ¶ 139.) They therefore made the decision to proceed with the RDA without him.

Although the Court did not adopt that conclusion, it did find that the conclusion was reasonable and factually grounded. In October 2011, Frumin received a notice of violation from DEP for undertaking activities on the AMA Property without giving the required advance notice. Also in 2011, Caddick brought 7,000 to 8,000 cubic yards of regulated fill onto the AMA Property. (Findings of Fact, ¶¶ 136-137.)[4]

Subsequent environmental developments on the AMA Property only reinforced the factual basis for Bast's and Zaharchuk's decision. On February 17, 2012, DEP issued an Order to AMA and Caddick, directing them to cease all earth moving activities as a result of their having illegally placed regulated fill soil on the AMA Property. (Findings of Fact, ¶ 138.) In that Order, DEP directed AMA to submit an application for an NPDES permit by April 30, 2012.

---

[4] There was no dispute that doubts about environmental cleanup were a legitimate basis for proceeding separately. Frumin himself testified that he wanted to develop the AMA Property separately from the MAPP Property because he was concerned about environmental contamination that he perceived to be on *MAPP's* parcel. (Findings of Fact, ¶ 141; N.T. (2/7/19) Frumin pp. 58:16-60:6.)

7

AMA did not submit a complete application for an NPDES permit, however, until the second half of 2013. In the meantime, in April 2013, Frumin and AMA received an additional notice of violations from DEP. In December 2013, Frumin, on behalf of AMA, agreed to pay a civil penalty assessed by DEP with regard to the AMA Property. In short, even though no residential development can occur on the AMA Property until the removal of the regulated fill, it had not been removed as of the time of trial, and the AMA Property still had not been qualified as Act 2 compliant. (Findings of Fact, ¶¶ 162-168.)[5]

## E.   No Tortious Interference by Zaharchuk and Bast

The same environmental concerns were sufficient to justify the decisions by Zaharchuk and Bast to proceed with the development without Frumin and the efforts by Zaharchuk with the RDA to reallocate RACP funds away from the AMA Property. These concerns were therefore sufficient to justify Zaharchuk's and Bast's actions for purposes of Plaintiffs' claims of tortious interference with contract.

> Tortious interference with prospective or existing contractual relations consists of the following elements:
>
> > (1)     the existence of a contractual, or prospective contractual relation between the complainant and a third party;
> >
> > (2)     purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> >
> > (3)     the absence of privilege or justification on the part of the defendant; and
> >
> > (4)     the occasioning of actual legal damage as a result of the defendant's conduct.

---

[5] In light of these obstacles, the fact that DEP issued an NPDES permit to AMA in July of 2015 does not undermine the reasonableness of Bast's and Zaharchuk's conclusion that they could not continue to work with Frumin.

8

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Maverick Steel Co. v. Dick Corp./Barton Malow*, 54 A.3d 352, 354-55 (Pa. Super. 2012).

Initially, as discussed above, there was no contract between Frumin or ACDP#1 and the RDA. But even if there were such a contract (or if there might be a *prospective* contractual relation), Plaintiffs failed to establish the third element of the tort — the absence of privilege or justification. Zaharchuk and Bast were reasonably concerned that if Frumin and AMA remained a part of the joint development project, the entire project could lose its RACP funding because of Frumin's failure to timely pursue environmental remediation of the AMA Property. This failure persisted despite repeated communications by Gagné, on behalf of Bast, that environmental remediation of the AMA Property was critical to any joint development. (Findings of Fact, ¶¶ 125-132.) The Court concluded from the evidence that the concerns by Zaharchuk and Bast were genuine and objectively justified. (Conclusions of Law, ¶ 13.) Further, the reallocations of funds by the RDA, made at Zaharchuk's behest, were permissible under the terms of the Grant Agreement and OB procedures. (Conclusions of Law, ¶¶ 11-12.)[6]

Accordingly, the Court held that Zaharchuk and Bast were not liable to Plaintiffs for tortious interference with contract.

## F. Nonsuit on Plaintiffs' Easement Claims

At the close of the Plaintiffs' evidence, the Court granted a compulsory nonsuit on Counts VI and VII of the Complaint, alleging that certain Defendants had interfered with Frumin's and AMA's rights of easement and access under declarations and covenants established in the Nicolet Subdivision. The nonsuit was granted on the basis of a straightforward lack of

---

[6] Plaintiffs also suggest in paragraph 5 of their Concise Statement that Bast's conduct constituted a breach of his fiduciary duty to Frumin. As discussed above, Frumin and Bast never consummated the formation of an entity (such as ACDP#1) that would give rise to a fiduciary duty between them. Even if such a duty somehow arose, it was terminated when Frumin and Bast agreed to go their separate ways.

proof of the specific property rights that Plaintiffs contend were invaded. No metes-and-bounds description of any easement or right of access was presented. Nor was a map or diagram presented that established the location of Plaintiffs' asserted property rights. A copy of the Nicolet Subdivision Plan was introduced, but it was mostly illegible and plainly insufficient to establish the boundaries of any such rights. In order to show that their easement right or right of access had been unlawfully blocked, AMA and Frumin had the burden of showing the location of the easement or access route. There was no showing that a legible version of the Subdivision Plan, issued in 1988 (Compl., ¶ 90), could not be obtained. *Cf. Shaffer v. Baylor's Lake Ass'n*, 141 A.2d 583, 587 (Pa. 1958) ("It is often difficult to prove the exact extent or boundaries of an *ancient* right or easement, and consequently the law is realistic and does not require the same minutiae of proof *as is required in cases where ample proof is or should be available*.") (former emphasis by the Court; latter emphasis added). Therefore, on this failure of proof, a compulsory nonsuit was granted.

### G.    Partial Nonsuits on Counts I Through III

Finally, Plaintiffs challenge the grant of compulsory nonsuits against AMA on Counts I and III of the Complaint and against AMA and Frumin on Count II.[7] None of these nonsuits resulted in the dismissal of any count as a whole. Rather, the nonsuits were granted against specific Plaintiffs who could not establish a claim on their own behalf.

On Count I, asserting a breach of contract by the RDA, there was no evidence whatsoever of any contract between *AMA* and the RDA; therefore a nonsuit was entered against AMA on

---

[7] To be precise, the Statement of Matters challenges the "compulsory non-suit of AMA in counts I and II [sic] and AMA and FRUMIN to Count II." (Statement of Matters, ¶ 7.) Because of the redundant references to Count II, it is assumed that the reference to "counts I and II" was intended to be to Counts I and III.

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Count I. Likewise, Count II alleged tortious interference with a contract between ACDP#1 and the RDA. There was no evidence of a contract between AMA or Frumin individually and the RDA; therefore, a nonsuit was entered against AMA and Frumin on Count II. Finally, on Count III, alleging tortious interference with a contract with Bast and/or MAPP, the evidence was clear that any contract of this nature was between Frumin and Bast, not between AMA and MAPP, and therefore a nonsuit was entered against AMA.

Each of these counts was permitted to proceed on behalf of the specific Plaintiff that arguably did have a relevant contract. Thus, a nonsuit was denied against ACDP#1 on Counts I and II and against Frumin on Count III. Of course, after the presentation of all the evidence and the written and oral arguments of counsel, the Court decided on the merits against these remaining Plaintiffs on all three counts. Thus, even if the partial nonsuits had not been granted, all three counts would have been decided against all Plaintiffs.

## III.   CONCLUSION

This case involved many days of dense testimony and several volumes of exhibits. The Court gave careful consideration to all of the evidence and the arguments of counsel. For the reasons set forth in the Court's Decision, as supplemented by the discussion above, the Court concluded that Plaintiffs did not prove any of the claims set forth in their Complaint.

**BY THE COURT:**

JEFFREY S. SALTZ,            J.

11

Efiled on 1/*13* /20
Copies mailed on 1/ *13* /20 to:
Elizabeth Catalano, Court Administration
Copy emailed on 1/*13* /20 to:
George Cardenas georgc@montgomcrybar.org

Case# 2014-04500-230 Docketed at Montgomery County Prothonotary on 01/13/2020 2:44 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.